UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

THE CITY OF            .    Case No. 2:17-CV-03894-MMB
PHILADELPHIA,          .
                       .
         Plaintiff,    .    U.S. Courthouse
                       .    601 Market Street
     v.                .    Philadelphia, PA 19106
                       .
JEFFERSON BEAUREGARD   .
SESSIONS, III          .
                       .
         Defendant.    .    September 12, 2017
. . . . . . . . . . . . ..   1:29 p.m.


PRETRIAL CONFERENCE TRANSCRIPT
BEFORE HONORABLE MICHAEL M. BAYLSON
SENIOR UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff        VIRGINIA GIBSON, ESQ.
City of Philadelphia:    ALEXANDER BOWERMAN, ESQ.
                         JASMEET AHUJA, ESQ.
                         HOGAN LOVELLS US LLP
                         1735 Market Street, 23rd Floor
                         Philadelphia, PA 19103

                         JUDY LEONE, ESQ.
                         ROBERT HEIM, ESQ.
                         SARA SOLOW, ESQ.
                         DECHERT LLP
                         2929 Arch Street
                         Philadelphia, PA 19104

                         SOZI TULANTE, CITY SOLICITOR
                         MARCEL PRATT, CHAIR, LITIGATION GROUP
                         CITY OF PHILADELPHIA LAW DEPARTMENT
                         1515 Arch Street, 17th Floor
                         Philadelphia, PA 19102

For the Defendant        ARJUN GARG, ESQ.
Sessions:                JOHN TYLER, ESQ.
                         U.S. DEPARTMENT OF JUSTICE
                         20 Massachusetts Avenue, NW
                         Washington, DC 20530

2

APPEARANCES: (CONTINUED)

Audio Operator:              J. LUTZ

Transcribed by:              KELLI RAY, CER-349
                             Lawrence Court Transcription & Video
                             P.O. Box 530790
                             DeBary, FL 32753
                             386.216.5921

        Proceedings recorded by electronic sound
    recording, transcript produced by transcription service.

*Lawrence Court Transcription & Video, LLC * 386.216.5921*

3

I N D E X

|                                          | PAGE |
|------------------------------------------|------|
| COURT QUESTIONS                          | 6    |
| COURT ENTERS ORDER                       | 11   |
| MS. GIBSON ADDRESSES REASON FOR SUIT     | 12   |
| MR. TULANTE ADDRESSES THE COURT          | 12   |
| MS. SOLOW SUMMARY OF LEGAL ISSUES        | 17   |
| CERTIFICATE OF COURT REPORTER            | 21   |

EXHIBITS                                    ID.   EVD.

NONE

4

1              JUDGE MICHAEL BAYLSON:  Please be seated.  Okay.  We

2      have counsel for the government -- okay.  Hello, good

3      afternoon.

4              Hello.

5              MR. ARJUN GARG:  Good afternoon, Your Honor.

6              THE COURT:  Oh, hi.  Good afternoon.

7              MR. GARG:  This is Arjun Garg of the U.S. Department

8      of Justice.  Also with me is John Tyler of the Department of

9      Justice.  Thank you for permitting us to appear by telephone

10     today.

11             THE COURT:  Not a problem.  All right.  Thank you

12     very much.

13             And let me introduce to you the people who are here

14     in the courtroom.  First, we have the City Solicitor, Mr.

15     Tulante.  Good afternoon.

16             MR. SOZI TULANTE:  Good afternoon, Your Honor.

17             THE COURT:  And we have Virginia Gibson, who is

18     counsel for the plaintiff.  Along with Sara Solow, who is --

19             MS. SARA SOLOW:  Good afternoon.

20             THE COURT:  -- also co-counsel.  And we have Mr. Heim

21     and Ms. Leone and some other people who I don't -- do they want

22     their appearances noted on the record, Ms. Gibson?

23             MS. VIRGINIA GIBSON:  Yes, Your Honor.  Jasmeet Ahuja

24     and Alex Bowerman from Hogan Lovells are also with us.

25             THE COURT:  Okay.  Good afternoon, everybody.

1           MR. MARCEL PRATT:  And Marcel Pratt.

2           THE COURT:  All right.  Good afternoon to you too.

3           Okay.  The first thing I would like to do is just put

4   on the record a number of relationships that I have with people

5   involved in this case.  The first thing I want to mention is

6   that Attorney General Sessions and I were U.S. Attorneys

7   together and we served in that capacity for about four years.

8   And I think he was a U.S. Attorney for a longer time, but that

9   was my tenure.  And I got to know him during that time.  I

10  don't really think I've had any real contacts with him since

11  then.  It was a long time ago, but I just mention it.

12          In addition, I have a number of former law clerks who

13  are working in the Department of Justice.  And I have no

14  knowledge that they're working in any way on this case, not

15  that that would make any difference.

16          Ms. Gibson, who appears to be lead counsel for the

17  plaintiff, was an Assistant U.S. Attorney who worked under me

18  for a period of time, for whom I have a very high regard.  And

19  Sara Solow, who is here, was my law clerk three years ago, I

20  think.  And I have a very high regard for her as well.

21          And I've known Mr. Heim for many years.  We've been

22  co-counsel on cases and he's involved in some other cases here.

23  And we've had a social relationship.

24          And Judy Leone is a frequenter of the opera.  And she

25  and I see each other at opera performances and have chatted on

1  different occasions about that.

2          So if anybody has any problem with my proceeding as

3  the judge assigned to this case because of any of those, you're

4  welcome to file whatever you think is relevant with the clerk.

5  I don't see any of those relationships as interfering with my

6  abilities here.

7          Having said that, I want to express my appreciation

8  to counsel for preparing the joint case management proposal

9  which responded to a number of the issues that I had raised.

10         The -- I have a couple of comments or questions.  And

11 the first question is whether the city has come to any more

12 definite strategies to whether it's going to file a motion for

13 preliminary injunction?

14         MS. GIBSON:  Your Honor, at this time we have not.

15 We did learn information yesterday as reported to us about

16 argument.  In the preliminary injunction motion filed by the

17 City of Philadelphia, that the Justice Department in opposition

18 to that motion has published the conditions, the specific

19 conditions, that it expects to --

20         THE COURT:  Just pull the microphone closer, please?

21         MS. GIBSON:  Did I say -- I don't know what I said.

22         Has -- the DOJ has published the specific conditions

23 that it expects to impose on September, on or about September

24 30th with respect to Philadelphia as well as other cities.  And

25 it is our -- and we just reviewed -- received those yesterday

1  and are reviewing them.

2          We are not optimistic at this point in time, Your

3  Honor, that we will be able to avoid filing a motion for

4  preliminary relief.  But we will know -- we will know more

5  certainly September 30 when those conditions are published to

6  the City of Philadelphia specifically.  And at that time we

7  will again be considering what options the city has in this

8  litigation or otherwise with respect to the grant.

9          THE COURT:  All right.  So you don't anticipate

10  filing that before September 30th?

11          MS. GIBSON:  That is correct, Your Honor.

12          THE COURT:  All right.  And then -- now, if you did

13  file that, approximately how much time do you think you would

14  need for a hearing?  Do you have any opinion about that?

15          MS. GIBSON:  I -- we -- I would estimate that the

16  city will have, to the extent that we present evidentiary

17  testimony of witnesses, I would expect we would have three to

18  five witnesses, Your Honor.  So that could take a day to a day-

19  and-a-half.

20          THE COURT:  Okay.  All right.  Now, I was curious

21  that neither party signed the need for any discovery at this

22  time.  Would that change if you filed a motion for preliminary

23  injunction?

24          MS. GIBSON:  The city does not view discovery as

25  essential to the arguments that it is making.  These are

1   largely legal arguments.

2            THE COURT:  All right.  Okay.  Mr. Garg, do you --
3   what about you?

4            MR. GARG:  From the government's perspective, Your
5   Honor, I think we would have to see the motion before we could
6   really opine on that.  As a general matter, I don't think we
7   would expect to engage in discovery on a motion like that.
8   However, the possibility of putting witnesses up at an
9   evidentiary hearing might prompt us to get some discovery about
10  that kind of evidence that's going to be presented.  But the
11  bottom line is it would be difficult for me to say at this
12  time.

13           THE COURT:  Okay.  All right.  Does the defendant
14  have any better idea whether you're going to file an answer or
15  a Rule 12 motion?

16           MR. GARG:  Your Honor, I think we will reserve on our
17  flexibility in that respect.  I do anticipate it is likely that
18  we will move to dismiss some or all these claims.  But again, I
19  think that's a topic better reached later on when the --

20           THE COURT:  All right.

21           MR. GARG:  -- battle lines are clearer.

22           THE COURT:  All right.  Well, I have to express to
23  all of you that although I appreciate your coming to agreement,
24  in a case of this nature which there's a great deal of public
25  interest, I just think these time lines are too extended.

9

1            And I'd like to move the government's response up

2    from October 30th to somewhere in mid-October.  And then we, if

3    a Rule 12 motion was filed, then the briefing would move up and

4    we'd have the argument some time in early November.  I mean I

5    intend to prioritize this case on my own calendar because of

6    the public interest involved.

7            And I -- I mean I -- Mr. Garg, you're, I know you're

8    representing the government in all of these different lawsuits

9    in different parts of the United States, I assume; is that

10   correct?

11           MR. GARG:  Yes, Your Honor, obviously the Department

12   of Justice speaks as one.

13           THE COURT:  Right.

14           MS. GARG:  So --

15           THE COURT:  Okay.  But and I would presume that the

16   plaintiff's counsel in this case will have some liaisons with

17   plaintiff's counsel and the other cities that have filed.  And

18   I presume that if the government files a Rule 12 motion in any

19   cases -- have you responded to any of the other complaints yet,

20   in Chicago or San Francisco or California?

21           MR. GARG:  No, Your Honor.

22           THE COURT:  Okay.  Well, I don't want to curtail

23   anybody's ability to represent their clients well, but since I

24   know very well the capabilities of the plaintiff's lawyers in

25   Philadelphia, I presume that the other cities have counsel who

1  are equally proficient and able to do topnotch legal work on a

2  more expedited basis.

3        So I'd like to -- I'd like to adjust those dates, to

4  tell you truth.  I'd like the response to the complaint to be

5  due October 13th.  And then allowing two weeks for it, the

6  usual 14 days, for the response; that would be due October

7  27th.  And the reply brief in my usual case management program

8  is seven days; and that would be due November 3rd.  And I will

9  schedule an argument for the week of November 6th.

10       Now, is that a hardship personally or professionally

11 on anybody?  Let me know.

12       All right.  Ms. Gibson?

13       MS. GIBSON:  Not for plaintiffs, Your Honor.

14       THE COURT:  All right.  Mr. Garg?

15       MR. GARG:  Your Honor, I'm just glancing at my

16 calendar here to make sure.

17       THE COURT:  Well, I know you're not going to be the

18 only one working on this case.

19       MR. GARG:  That is correct, Your Honor.  It's

20 acceptable to the government.

21       THE COURT:  Yes.  But you're lead counsel; is that

22 correct?  All right.

23       MR. GARG:  That is correct, Your Honor.

24       THE COURT:  All right.  Any problem with those dates?

25       MR. GARG:  No, Your Honor.

1           THE COURT:  Okay.  Well, I'll -- then I'll enter an

2    order with those dates.  And then -- now, obviously if an

3    answer is filed, the whole thing becomes moot.  But even if

4    there's a Rule 12 motion in part, I think that should be the --

5    that should give everybody enough time to deal with the legal

6    issues.  And if there's a preliminary injunction motion filed,

7    I will -- I may -- if you ask, if you want me to reconsider

8    those dates because of a preliminary injunction motion, I'll

9    come back to it at that time because that might -- that would

10   take priority, I think.

11           MS. GIBSON:  Thank you, Your Honor.

12           THE COURT:  All right.  And I also would expect that

13   there's going to be coordination among the plaintiff's counsel

14   in these different four cases.  Am I correct, there are only

15   four cases so far as -- is that correct?

16           MS. GIBSON:  That's all we know about, Your Honor.

17           THE COURT:  Okay.  So I presume that you're -- you'll

18   be trading briefs and things like that.  And I have no

19   intention of contacting any of the other judges.  None of them

20   have contacted me.  But that covers what I wanted to review

21   with you this afternoon.

22           Does anybody on the plaintiff's side want to bring up

23   any other issues?

24           MS. GIBSON:  Your Honor, we have no issues

25   procedurally, but if we may for a moment take a time to explain

1  to the Court the reason for the bringing of the suit at this

2  time?

3          THE COURT:  Yes.

4          MS. GIBSON:  Yes, certainly.  Plaintiff -- there are

5  many unknowns in this case because we're not in a normal

6  situation for the -- we, the City of Philadelphia, are not in a

7  normal situation.  Because for the first time since the Byrne

8  Judicial Assistance Grants were implemented -- were promulgated

9  by Congress and implemented by the Department of Justice, the

10 DOJ has imposed or has announced it will impose conditions on

11 the receipt of that grant that we believe unlawfully and

12 unconstitutionally recruit the City of Philadelphia to conduct

13 the enforcement of its immigration regulatory system.  And that

14 is the reason why we are here today.

15         And Mr. Tulante, the City Solicitor, would like to

16 speak to that issue --

17         THE COURT:  Sure.

18         MS. GIBSON:  -- personally.

19         THE COURT:  Good afternoon.  How are you?

20         MR. TULANTE:  Good afternoon, Your Honor.  And, Your

21 Honor, first let me say thank you for your attention to this

22 matter, and in particular the expedition in which you're

23 addressing it.

24         Philadelphia, as is commonly known, is the poorest of

25 our big city -- big cities with an incredible rate of poverty.

1 And the 1.8 million approximately that we're anticipating from

2 this program is very integral to the city in terms of paying

3 for police overtime and paying for the police officers.

4      And as my colleague had indicated, Ms. Gibson, we had

5 received this grant without controversy under multiple

6 administrations, Democratic and Republican, up until now.  And

7 the impact for the city really is our ability to do community

8 policing, which clearly the Department of Justice promotes as

9 well.  We want to be able to have our officers go out there and

10 investigate and solve crimes without regard to status

11 information.  And since we implicated -- implemented these

12 policies, rime has gone down by 17 percent.  And so our policy

13 very clearly is that we would not collect immigration

14 information and nor does federal law requires us to.

15      Now, that would change clearly if these conditions

16 were implemented in part because it would make our officers be

17 part of federal immigration enforcement.  And the two policies

18 that are really -- there are a couple of policies, but I want

19 to highlight two.  One is a police directive that was issued by

20 then Police Commissioner John Timoney in 2001 and then

21 subsequently by there's an executive order that was issued by

22 Mayor Nutter in 2009.  They really go to the core of allowing

23 our residents, without regard to status, being able to avail

24 themselves to the policies that are available to the city and

25 to them.

1           And I know there's a lot -- one thing I really want

2    to focus on, Your Honor, there's a lot of political talk and

3    attention on detainers.  And this case does not impact directly

4    on whether or not, you know, we comply with detainers.  I want

5    to make that clear.

6           But that executive order touches on the same point

7    that, you know, if we comply with detainers, you know, we would

8    be then, one, there's some constitutional other issues involved

9    with that.  But then be part of the federal immigration

10   proceedings.

11          And so what we require is that there be a judicial

12   warrant signed by a district judge like Your Honor or a

13   magistrate judge before we hold anyone.  But also before we

14   provide notification to ICE that there is somebody that they're

15   interested in in our custody.

16          There are two conditions in addition to 1373 that are

17   relevant here, Your Honor.  Is one, respect to ICE seeking

18   access to our detention facilities to interview any inmate, we

19   do have a policy that allows ICE to do so at the consent of the

20   inmate.  And also, the inmate is alerted to his or her right to

21   get counsel.  And we think that that's reasonable and that's

22   what you'd expect of any responsible municipality.

23          And for 78 percent of our inmate population, we have

24   about 6,700 inmates in our six prisons, they're in pretrial

25   detention.  All right.  So they haven't been adjudged guilty or

been found of violating any crime.  And as the condition reads

it, it talks about scheduled release.  But if you look at most

of our prisoners who are ultimately if they're released,

there's no scheduled release, they're released only upon a

judge -- they go to a bail hearing, a judge finds them that

they can be released on bail.  And there's no opportunity for

us to provide ICE with 48 hours notice.

And, Your Honor, I know from my experience being at

the U.S. Attorney's Office that it's integral for our local

police to work with federal agencies.  They do so on multiple

task forces.  They do so by inputting information into NCIC,

inputting information into fingerprint databases.  And so this

is not a case where on one hand you have the city that doesn't

want to comply with applicable law and the government is

interested in law enforcement, we're both -- we're both in

that.  And one of the things I've been really focused on as

city solicitor is try to continue promoting that relationship

because I've seen it from the other side as an AUSA.

But I want to end where I started off, Your Honor.  I

appreciate that you see the public interest in this case and

also the need for expeditious resolution because at the end of

the day $1.8 million means a lot to a city with our dire

poverty.

THE COURT:  All right.  Thank you.

All right.  Mr. Garg, do you want to respond?  You

1  don't have to.

2            MR. GARG:  No, Your Honor.  We have no statement on

3  the case today.  We'll respond in due course.

4            THE COURT:  Okay.  By the way, I can't force you to

5  do this but I strongly suggest that you have an Assistant U.S.

6  Attorney from Philadelphia appear on the docket just in case we

7  need to get a hold of somebody for some reason or act as local

8  counsel.  I think that would be a good idea in every civil case

9  that the Department of Justice is counsel for a defendant.  I'd

10 like you to consider that.

11           MR. GARG:  We'll take it under advisement, Your

12 Honor.  Thank you.

13           THE COURT:  Okay.  Ms. Gibson knows that was the

14 practice when she and I were in the U.S. Attorney's Office

15 together.  I think it makes a lot of sense.  I mean that

16 doesn't mean you can't call the shots and do all the briefing,

17 et cetera, but I think it's good to have a local AUSA on the

18 docket sheet so they can receive information in a flash in case

19 sometimes you want to call counsel and say one thing or the

20 other, it maybe even to postpone a hearing for an hour.  And

21 it's a good idea to have a local person for that purpose.

22 Which I appreciate your considering doing that.

23           Okay.  Thank you very much for coming in everybody.

24 Have a -- anything else from the plaintiffs?  Okay.

25           MS. GIBSON:  Thank you.  Your Honor, Ms. Solow is

1  prepared to give you a brief summary of the legal issues, if --

2           THE COURT:  Oh, okay.

3           MS. GIBSON:  -- the Court so desires?

4           THE COURT:  All right.  Thank you.

5           MS. SOLOW:  Your Honor, just a word about the nature

6  of the claims we're bringing.  And it goes to your question

7  about why we don't think we need discovery at this point.  And

8  I think we're in agreement with the government on that for now.

9           These are essentially really questions of law.  We

10 are arguing that the imposition of these three new conditions

11 by the Attorney General is not authorized by the statute, it's

12 not authorized by the Constitution.  And all that the Court

13 really needs to do to resolve those claims is read the statute,

14 read the legislative history, read how it's been implemented

15 over time and then read the conditions that are going to be --

16 have been advised to the public in these releases that the DOJ

17 has put out and are going to be printed in the text of our

18 grant award.  And you can see that they're flatly contradicted

19 by the type of authorization that the statute gives to the

20 Attorney General in dispersing this grant and to what Congress

21 had in mind when it created the grant program in the first

22 place.

23          So we really don't think that the Court needs to do

24 much of an exercise in factual analysis to resolve that major

25 claim that we're bringing about the imposition of the -- of

1  these three conditions.  There is a separate claim we have that

2  might require some more factual exposition, which is we've also

3  asked for a declaratory judgment that as to one of the

4  conditions we are declaratively in compliance with that, which

5  is that we comply with 8 U.S.C. 1373.  And we've thought about

6  the facts that the Court would need to resolve that claim for

7  or against the city.

8          And our intention is that if we file a preliminary

9  injunction motion at the end of the month or in early October,

10  we would attach declarations to our PI motion.  The

11  declarations would be from city officials that explain what our

12  policies and practices are, why they comply with the statute.

13  And then those would likely be the very witnesses that we would

14  present before the Court in a hearing thereafter.

15          And so again, we don't really think much discovery

16  would be needed, all of the facts will be part of our PI

17  motion.  And then we would just develop them further during a

18  hearing.

19          So that is our intention --

20          THE COURT:  Um-hum.

21          MS. SOLOW:  -- as to how we would develop our claims.

22          THE COURT:  All right.  Well, if that's your position

23  have you thought about filing a motion for summary judgment?

24          MS. SOLOW:  Not --

25          THE COURT:  I mean if you're -- if the city believes

1 that a lot of these issues or most of them are legal ones that

2 can be determined as a matter of law or based on the documents

3 that you attached to your complaint, it would seem to me that

4 we could have cross motions for summary judgment.  And I'd like

5 counsel to just think about that.  You don't have to tell me

6 now, but I think that might make a lot of sense in coming to a

7 decision.

8          And I presume -- and as I said, I will expedite

9 whatever is filed in this case.  And I'm sure the Third Circuit

10 would do the same.  And whatever I might rule, and the losing

11 party would likely appeal.  And given the fact that you've got

12 these other cases that would go to possibly the Seventh Circuit

13 or the Ninth Circuit, eventually, you know, this may be an

14 issue the Supreme Court would be interested in.  But I'm -- we

15 don't have to get that far.  But I think you should all think

16 about having cross motions for summary judgment promptly after

17 the answer is filed.

18          MS. SOLOW:  I think our assessment was that if the

19 case does unfold in the typical course with a Rule 12 motion or

20 an answer and a response, we could talk about asking to convert

21 those papers into summary judgment papers.  Because --

22          THE COURT:  Right.

23          MS. SOLOW:  -- there's a pretty strong chance that we

24 wind up in a PI posture, in a preliminary injunction posture.

25          THE COURT:  Correct.

1            MS. SOLOW:  That might eclipse the need for a summary

2  judgment.

3            THE COURT:  Well, and that brings up -- well, first

4  of all, the reason I asked the question about Rule 12(d),

5  because if the government attaches documents to their -- to

6  their motion to dismiss, I basically have to convert this to a

7  Rule 56 motion.  So there may be limited discovery, but then we

8  could have -- then you could file a cross motion and raise

9  these legal issues.

10           And the other thing that comes to mind in that same

11 context is that you would file a motion for preliminary

12 injunction but very possibly I would refer -- treat it as a

13 final motion.  And we'd take care of whatever discovery was

14 outstanding.  And then we might have briefing on the legal

15 issues and then a hearing on any equitable issues.  And from my

16 point of view, all of this is possible before the end of the

17 year.  And I think it would be very much in the public interest

18 to have a case like this resolved promptly.

19           So just think about it.  Yes?

20           MS. GIBSON:  Your Honor, we will certainly do that.

21           THE COURT:  Okay.

22           MS. GIBSON:  And we appreciate the --

23           THE COURT:  All right.

24           MS. GIBSON:  -- attention that you are placing on the

25 city's claims.  And we'll take your ideas into -- under

21

1  consideration and speak with counsel on the other side about

2  them.

3           THE COURT:  All right.  Very good to see you all.

4  Thanks for coming in.  And have a nice day.

5           And, Mr. Garg, thank you for calling in.

6           MR. GARG:  Thank you, Your Honor.

7           MR. TULANTE:  Thank you, Your Honor.

8           MS. GIBSON:  Thank you, Your Honor.

9           THE COURT:  Court is adjourned.

10       (The proceeding concluded at 12:13 p.m.)

11                        *  *  *  *  *

12

13

14

15

16

17                   **C E R T I F I C A T I O N**

18        I, Kelli Ray, court approved transcriber, certify

19  that the foregoing is a correct transcript from the official

20  electronic sound recording of the proceedings in the above-

21  entitled matter, and to the best of my ability.

22

23  _Kelli Ray_____

24  _Kelli Ray, CER-349_____

25                            DATE:  October 12, 2017


*Lawrence Court Transcription & Video, LLC * 386.216.5921*