## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CITY OF PHILADELPHIA,<br><br>      *Plaintiff*,<br><br>v.<br><br>JEFF SESSIONS, in his official capacity as Attorney General of the United States,<br><br>      *Defendant*. | Case No. 2:17-cv-03894-MMB |

## DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

DATED: November 9, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LOUIS D. LAPPEN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

ARJUN GARG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

Pursuant to the Court's invitation at the November 2, 2017 hearing on the City's motion for a preliminary injunction, Defendant respectfully submits this supplemental brief. As explained below, the City's assertion that the City cooperates with federal immigration authorities in some instances does not amount to "substantial compliance" with 8 U.S.C. § 1373, which prohibits the City from restricting inter-governmental sharing of information regarding immigration status. Certain cooperative efforts, in other words, do not excuse plain violations in other contexts. Additionally, this brief below discusses *Virginia Department of Education v. Riley*, 106 F.3d 559 (4th Cir. 1997) (en banc), and *Arizona v. United States*, 567 U.S. 387 (2012), as directed in the Court's November 2 correspondence to counsel.

**A.     A Principle of Substantial Compliance Does Not Immunize the City's Demonstrated Non-Compliance with 8 U.S.C. § 1373**

As the Court is aware, Section 1373 states that a local government cannot "prohibit, or in any way restrict," local officials from communicating with federal immigration authorities about "information regarding . . . immigration status."  The statute does not require a locality's affirmative efforts to share information, nor does it require local officials to engage in unconstitutional conduct.  That "the City regularly shares information about criminal suspects with the federal government through the use of three databases," Pl.'s Proposed Findings of Fact ¶ 18 (Dkt. No. 65), reflects the City's willingness, in certain instances, to go beyond the requirements of Section 1373.  But it does not reflect the City's consistent adherence with the core requirement of Section 1373, and indeed the City falls short in at least two instances.

First, the City does *not* assert in its proposed findings of fact that the information about criminal suspects that the City shares through databases includes such information as the City possesses on the immigration status of such individuals, even though the City acknowledges that under a state regulation the City's prison system has to ask about immigration status upon

1

admittance.  *See* Def.'s Proposed Findings of Fact ¶ 10 (Dkt. No. 64).  Rather, according to a City official overseeing City police and prisons, it would violate the City's Executive Order No. 8-09 for a City employee to disclose information regarding immigration status to U.S. Immigration and Customs Enforcement ("ICE").  *See id*. ¶ 25.  That official testified in particular that the City's prisons do ask for immigration status information, but as a matter of policy do not communicate it to ICE.  10/26/17 Hr'g Tr. at 111:5-18.  This prohibition substantially violates Section 1373.

Second, the City does *not* assert in its proposed findings of fact that the information the City shares through databases includes such information as the City possesses on the release date of detained aliens, which is an aspect of "information regarding . . . immigration status."  *See* Def.'s Opp'n to Mot. for Prelim. Inj. ("PI Opp'n") at 38 n.11 (Dkt. No. 28).  Rather, under the City's Executive Order No. 5-16, the City will provide ICE with notice of an alien's pending release only where ICE's request is supported by a judicial warrant.  *See* Def.'s Proposed Findings of Fact ¶¶ 11, 15.  This is so even though the City knows that an immigration detainer, which includes a request for notification before an alien is released from custody, is often issued pursuant to an administrative warrant rather than a judicial warrant.  *See id*. ¶¶ 13-14.  There is no Fourth Amendment or Tenth Amendment rationale that necessitates forcing ICE to go through the exercise of obtaining a judicial warrant before a City employee is permitted to provide information, upon ICE's request, about the City's pending release of a particular alien.  And it is of no consequence that for some portion of its detainees the City may not know a release date; what matters is that a sizable portion of detainees do have a known release date and that for all detainees the City has "in any way restrict[ed]" the sharing of custody release information by imposing a prerequisite that ICE must obtain a judicial warrant.  This restriction substantially violates Section 1373.

These examples demonstrate that the cooperation the City says it provides does not satisfy a standard of "substantial compliance" that the Court may be contemplating to read into Section 1373. Notably, both examples pertain to City prisoners, and thus are not aimed at information regarding the immigration status of victims of crime, witnesses to crime, or people utilizing City services—classes of people about whom the City has expressed reluctance to make disclosures. *See* Pl.'s Reply at 14-15 (Dkt No. 46). Nor are these examples the sort of "minor missteps," 11/2/17 Hr'g Tr. at 80:22-23, that a lens of substantial compliance might suggest should be considered immaterial. Rather, the City's mandates of non-cooperation can mean that aliens convicted of violent crimes are released back into the community rather than into ICE custody to face removal proceedings, even though the City's Police Commissioner repeatedly disclaimed any interest in harboring criminals. *See* 10/26/17 Hr'g Tr. at 20:9-10, 25:4-6, 25:25-26:1.

**B.**     ***Virginia Department of Education v. Riley***

The *Riley* litigation confirms that grant conditions can be enforceable where a grantee has notice of the conditions before agreeing to accept the related federal grant. *Riley* held that the U.S. Department of Education could not condition federal funding to Virginia under the Individuals with Disabilities Education Act ("IDEA") on a requirement that Virginia provide free educational services to disabled students who are expelled or suspended long-term due to serious misconduct wholly unrelated their disabilities. *See* 106 F.3d at 561. According to the Fourth Circuit, Congress in the IDEA statute did not clearly and unambiguously condition states' receipt of federal funds on such a requirement. *See id.*

With respect to the notice requirement, the City's case presents a fundamentally different posture than *Riley*. Here, the City has not yet received (much less accepted) an FY 2017 Byrne JAG award. With respect to requirements of the Section 1373 compliance condition that the Department of Justice has articulated in this litigation and in correspondence to the City from the

3

Department's Office of Justice Programs, the City has no plausible claim that its acceptance of an FY 2017 award would come without the City's awareness of what the Department has stated it expects. *See* 11/2/17 Hr'g Tr. at 51:6-25. To that extent, at a minimum, the constitutional requirement of notice presents no barrier to enforcement of the condition for an FY 2017 award.

In *Riley*, by contrast, the notice requirement was a greater barrier because the challenged condition was imposed mid-stream. The U.S. Department of Education had already in October 1992 conditionally approved Virginia's IDEA plan for fiscal years 1993-1995, under a statutory requirement that Virginia submit a three-year plan, and Virginia had already received funding for fiscal year 1993. *See* 106 F.3d at 560; *see also Va. Dep't of Educ. v. Riley*, 23 F.3d 80, 82 (4th Cir. 1994). Only later, in December 1993, did the U.S. Department of Education attempt to enforce the condition concerning provision of educational services to disabled students who have been disciplined for behavior unrelated to their disabilities. *See id.* at 83. That circumstance resulted in the Fourth Circuit's observation that "agencies of the federal government cannot be permitted freely to change funding conditions right in the middle of a multi-year grant period." *Id.* at 85.

This concern about "mid-grant shifts," *id.*, does not apply here, where the City is receiving clear and unambiguous guidance before an FY 2017 grant has been made. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 584 (2012) (noting that "Congress' power to legislate under the spending power . . . does not include surprising participating States with post-acceptance or retroactive conditions" (citation omitted)); *Williams v. Bitner*, 285 F. Supp. 2d 593, 602 (M.D. Pa. 2003) (distinguishing the imposition of "conditions retroactively" from a purpose to "remove entitlement only prospectively if a state decides to avoid" adhering to a condition).

Separately, this Court would err if it were to follow the suggestion in *Riley* that a problem of unconstitutional coercion under the Spending Clause, or a Tenth Amendment concern, arose when the U.S. Department of Education alleged non-compliance that affected 126 out of 128,000

4

disabled students for whom the federal funds were earmarked, and sought as a consequence to withhold all of Virginia's $60 million in IDEA funding, rather than a *pro rata* amount. *See* 106 F.3d at 569-70. As an initial point, the Fourth Circuit itself recognizes that this line of reasoning was dictum that did not garner a majority of that court. *See W. Virginia v. U.S. Dep't of Health & Human Servs.*, 289 F.3d 281, 291 (4th Cir. 2002). More importantly, the Third Circuit has held, by contrast, that no unconstitutional coercion arose where Pennsylvania retained a choice of "declining all federal funds to the Department of Corrections" notwithstanding that it "would doubtless result in some fiscal hardship." *Koslow v. Pennsylvania*, 302 F.3d 161, 174 (3d Cir. 2002); *see also Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 233 (3d Cir. 2013) (stating that "a hard or tempting choice does not mean that" recipients of federal funding "were given no choice at all, or that the choices are otherwise unconstitutional").

The City, for its part, thus has not meaningfully contended here that the challenged Byrne JAG conditions, concerning a $1.6 million grant as compared to the City's budget of well over $4 billion, are unconstitutionally coercive under the Spending Clause. Moreover, there is no Tenth Amendment problem posed here, as a condition imposed "pursuant to the Spending Clause does not violate the Tenth Amendment because states may choose whether to accept the conditions concomitant with acceptance of federal funds." *Williams*, 285 F. Supp. 2d at 601 (citing *S. Dakota v. Dole*, 483 U.S. 203, 210-11 (1987)); *see also* PI Opp'n at 41-42.

C. *Arizona v. United States*

In opposing a preliminary injunction, Defendant quoted *Arizona* for the principle that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Id*. at 4, 42 (quoting *Arizona*, 567 U.S. at 394). Defendant also relied upon *Arizona* in support of propositions that the Immigration and Nationality Act "accords the Executive Branch considerable discretion to direct enforcement pursuant to federal policy objectives," PI

5

Opp'n at 5 (citing *Arizona*, 567 U.S. at 396), and that under certain federal statutes "state officers may perform the functions of an immigration officer." PI Opp'n at 30 (quoting *Arizona*, 567 U.S. at 408). Because the Court's November 2 letter to counsel advised that the Court "do[es] not want any repetitive arguments or citations," Defendant will not further discuss these points here.

The Court may have taken note of the Supreme Court's comments in *Arizona* that "[r]emoval is a civil, not criminal, matter," 567 U.S. at 396, and that, "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Id*. at 407. Defendant's position here is consistent with these statements, and a ruling in Defendant's favor does not depend on whether the Department's challenged conditions are aimed at enforcing federal criminal law.

Defendant has argued, rather, that these conditions are germane to the criminal justice and law enforcement purposes of the Byrne JAG Program because "[f]ederal immigration enforcement undoubtedly intersects with criminal justice, at a minimum for the simple reason that a conviction for any of a wide array of criminal offenses renders an alien removable from this country," and that "[o]nce removed, a criminal alien who has committed such an offense . . . is no longer present in this country with the potential to re-offend." PI Opp'n at 26, 29; *see also Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (observing that "deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes" (citation omitted)); Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 10-11, 51 (linking City's law enforcement approach to immigration issues) (Dkt. No. 21-1). The modest intergovernmental cooperation called for by the challenged conditions moreover comports with the Supreme Court's recognition in *Arizona* that "[c]onsultation between federal and state officials is an important feature of the immigration system" and that Congress "has encouraged the sharing of information about possible immigration violations." 567 U.S. at 411-12.

6

DATED:  November 9, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LOUIS D. LAPPEN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

 */s/ Arjun Garg*
ARJUN GARG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I, Arjun Garg, hereby certify that on November 9, 2017 I electronically filed the foregoing document using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

                                         */s/ Arjun Garg*
                                         ARJUN GARG