**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THE CITY OF PHILADELPHIA,** <br><br> *Plaintiff*, <br><br> **v.** <br><br> **JEFF SESSIONS, in his official capacity as Attorney General of the United States,** <br><br> *Defendant*. | **Case No. 2:17-cv-03894-MMB** |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

DATED:  February 28, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LOUIS D. LAPPEN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

ARJUN GARG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.   The City Does Not Challenge Final Agency Action That Is Judicially Reviewable ....... 2

    II.  The Challenged Conditions Are Authorized by Statute. ................................................ 3

    III. The Challenged Conditions Are Not Arbitrary or Capricious. ...................................... 7

    IV. The Challenged Conditions Are Consistent with the Spending Clause.......................... 9

    V.  The Challenged Conditions Do Not Commandeer the City. ........................................ 11

    VI. The City Is Not Entitled to a Declaration That It Complies with 8 U.S.C. § 1373. ...... 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*A.W. v. Jersey City Pub. Sch.*,
   341 F.3d 234 (3d Cir. 2003).................................................................. 9

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)............................................................................ 12

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008)............................................................................ 6

*Arizona v. United States*,
   567 U.S. 387 (2012)............................................................................ 8

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006)............................................................................ 4

*Bennett v. Spear*,
   520 U.S. 154 (1997)............................................................................ 2

*Benning v. Georgia*,
   391 F.3d 1299 (11th Cir. 2004) .......................................................... 11

*Charles v. Verhagen*,
   348 F.3d 601 (7th Cir. 2003) .............................................................. 11

*City of Chicago v. Sessions*,
   264 F. Supp. 3d 933 (N.D. Ill. 2017) ............................................... 6, 7

*Cost Control Mktg. & Mgmt., Inc. v. Pierce*,
   848 F.2d 47 (3d Cir. 1988).................................................................. 13

*Davis v. Michigan Dep't of Treasury*,
   489 U.S. 803 (1989)............................................................................ 14

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)............................................................................ 7

*Impro Prods., Inc. v. Block*,
   722 F.2d 845 (D.C. Cir. 1983) ............................................................ 2

*Koslow v. Pennsylvania,*
302 F.3d 161 (3d Cir. 2002)......................................................... 9

*Lockhart v. United States,*
546 U.S. 142 (2005)...................................................................... 7

*Mayweathers v. Newland,*
314 F.3d 1062 (9th Cir. 2002) ..................................................... 9

*Naik v. Dir. U.S. Citizenship & Immigration Servs Vt.,*
575 F. App'x 88 (3d Cir. 2014) .................................................... 3

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
567 U.S. 519 (2012)................................................................... 12

*New York v. United States,*
505 U.S. 144 (1992)...................................................................... 9

*Ocean Cty. Landfill Corp. v. EPA, Region II,*
631 F.3d 652 (3d Cir. 2011).......................................................... 3

*Pierce v. SEC,*
786 F.3d 1027 (D.C. Cir. 2015) .................................................... 7

*Printz v. United States,*
521 U.S. 898 (1997)............................................................... 12, 13

*Rattlesnake Coal. v. EPA,*
509 F.3d 1095 (9th Cir. 2007) ..................................................... 3

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,*
867 F.3d 338 (3d Cir. 2017).......................................................... 8

*S. Dakota v. Dole,*
483 U.S. 203 (1987)............................................................. 4, 5, 12

*Steinle v. San Francisco,*
230 F. Supp. 3d 994 (N.D. Cal. 2017) ........................................ 15

*Stone v. INS,*
514 U.S. 386 (1995)...................................................................... 5

*Texas v. United States,*
523 U.S. 296 (1998)................................................................... 13

*United States v. Elkins*,
    683 F.3d 1039 (9th Cir. 2012) ............................................. 10

*United States v. Kebodeaux*,
    570 U.S. 387 (2013) .............................................................. 10

*United States v. Wise*,
    370 U.S. 405 (1962) ................................................................ 7

## **Statutes**

5 U.S.C. § 551 ........................................................................... 2

5 U.S.C. § 704 ........................................................................... 3

8 U.S.C. § 1226 .............................................................. 8, 10, 15

8 U.S.C. § 1227(a) .......................................................... 8, 10, 12

8 U.S.C. § 1228 ........................................................................ 12

8 U.S.C. § 1231(a) .............................................................. 10, 15

8 U.S.C. § 1252c ...................................................................... 10

8 U.S.C. § 1324(c) ................................................................... 10

8 U.S.C. § 1357(a) ......................................................... 8, 10, 12

8 U.S.C. § 1373 .................................................................. passim

28 U.S.C. § 510 ......................................................................... 5

34 U.S.C. § 10102(a) ...................................................... 1, 4, 5, 8

34 U.S.C. § 10152(a) ................................................................. 8

34 U.S.C. § 10153(a) .................................................... 1, 4, 6, 10

34 U.S.C. § 10154 .................................................................... 13

34 U.S.C. § 10251(a) ........................................................... 8, 10

Sex Offender Registration and Notification Act,
    34 U.S.C. § 20901 et seq ...................................................... 10

34 U.S.C. § 20927(a) ................................................................ 10

34 U.S.C. §§ 10156-10157 ........................................................ 4

37 Pa. Code § 95.222 ................................................................ 14

DOJ Reauthorization Act of 2005,
  Pub. L. No. 109-162, 119 Stat. 2960 (2006) .............................. 5

## Other Authorities

H.R. Rep. No. 104-469, pt. 1, (1996) ........................................ 15

H.R. Rep. No. 109-233 (2005) ............................................... 1, 5

S. Rep. No. 104-249 (1996) .................................................... 15

## INTRODUCTION

Law enforcement in this country is a cooperative endeavor. Criminal acts often implicate the jurisdiction of more than one agency, and thus local, state, and federal officials work together in a variety of ways to fight crime and ensure public safety. Not surprisingly, then, federal law often contemplates, and is premised upon, such cooperation. This is true for the Immigration and Nationality Act, and it is true for the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program"). Both statutes explicitly contemplate and encourage effective law enforcement by promoting cooperation between the Federal Government on the one hand and local and state governments on the other. Unfortunately, the City of Philadelphia has in recent years adopted policies of non-cooperation that frustrate information-sharing regarding the City's inmate population. And in this suit, the City seeks to further that stance by claiming that the Federal Government cannot condition its own law enforcement grants on such cooperation—even when an express statutory purpose of that funding is to promote cooperation.

Grant conditions are a traditional aspect of participation in the Byrne JAG Program, and there is no legal infirmity in the U.S. Department of Justice's imposition of the three conditions that the City challenges. To further information-sharing, those conditions require Byrne JAG Program grantees to comply with 8 U.S.C. § 1373, to give federal immigration authorities access to the City's detention facilities to meet with aliens, and to give those authorities "as much advance notice as practicable" before releasing an alien. The conditions are consistent not only with statutes governing the Byrne JAG Program, *see* 34 U.S.C. §§ 10102(a)(6), 10153(a), but also with the Program's legislative history, which confirms that the Department is empowered to "place special conditions on all grants and to determine priority purposes for formula grants," H.R. Rep. No. 109-233, at 101 (2005). The City moreover does not challenge final agency action so as to bring a proper challenge under the Administrative Procedure Act, and even if the City had done so the

imposition of the conditions is not arbitrary or capricious because they are rationally targeted at furthering the Byrne JAG Program's goals of advancing criminal justice and public safety. Nor is there merit to the City's claims that the conditions violate the Spending Clause or the Tenth Amendment. Finally, the City's request for a declaration that the City complies with 8 U.S.C. § 1373 is not justiciable and moreover fails in light of City policy that on its face appears non-compliant. For all of these reasons, the Amended Complaint warrants dismissal in its entirety.

## ARGUMENT

### I.     The City Does Not Challenge Final Agency Action That Is Judicially Reviewable.

Inasmuch as the City's claims arise under the Administrative Procedure Act ("APA"), they fail as a matter of law because the City does not challenge final agency action. *See* Mem. in Support of Mot. to Dismiss ("MTD") (Dkt. No. 102-1) at 9-10. As a preliminary matter, "[f]or there to be 'final' agency action, there must, of course, be 'agency action,'" as defined by 5 U.S.C. § 551(13). *Impro Prods., Inc. v. Block*, 722 F.2d 845, 848-49 (D.C. Cir. 1983). Once an appropriate "agency action" is identified, finality is reached only when the action in question (1) "marks the consummation of the agency's decisionmaking process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

The City fails to identify an "agency action" within the meaning of the APA, much less one that is "final." As relevant here, the APA defines "agency action" as "the whole or a part" of, *inter alia*, agency "relief . . . or [the] denial thereof," 5 U.S.C. § 551(13), and "relief," in turn, as including an agency "grant of money [or] assistance," *id*. § 551(11)(A). Comporting with these definitions, in the context of agency grant-making in particular, "the congressional appropriation to [an agency] of funds for a particular project *does not constitute a final agency action* by the [agency] until the [agency] has *reviewed a grant application and decided to disburse the funds*."

*Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103-04 (9th Cir. 2007) (emphasis added). As the Department has not determined whether to grant FY 2017 Byrne JAG funds to the City, or deny its pending application, it follows that there is, as of yet, no final agency action for judicial review.

The City erroneously attempts to treat a preliminary, interlocutory step in the grant-making process—an announcement of intent to impose the challenged conditions—as though it were the final step. *See* Mem. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") (Dkt. No. 119) at 11. But only an FY 2017 award to the City that contains the challenged conditions, "not intermediate decisions, will mark the 'consummation' of the agency's decisionmaking process." *Ocean Cty. Landfill Corp. v. EPA, Region II*, 631 F.3d 652, 656 (3d Cir. 2011); *see also Naik v. Dir. U.S. Citizenship & Immigration Servs Vt.*, 575 F. App'x 88, 92 (3d Cir. 2014) (finding no final agency action where agency "has yet to respond to or act upon" submission and has "not taken any action to officially deny" petition); 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). No such award has been made to the City. And precisely because the challenged conditions have not been imposed on the City in an FY 2017 Byrne JAG award, the City cannot have suffered legal consequences from the imposition of the conditions. There is no basis for the City's assertion that "the Department's decision"—*i.e.*, the announcement of intent to impose the conditions— somehow "requires Philadelphia to act" even before any such conditions have actually been included in an FY 2017 award to the City. Opp'n at 12. APA claims challenging the imposition of the three conditions thus warrant dismissal because they do not challenge final agency action.

## II.     The Challenged Conditions Are Authorized by Statute.

The City's claims that the challenged conditions are ultra vires and violate the Constitution's separation of powers fail because they rest fundamentally on the City's incorrect view that Congress has not authorized the Department to impose these conditions. *See* MTD at

10-15. The conditions come within the Department's authority granted by Congress to "plac[e] special conditions on all grants," 34 U.S.C. § 10102(a)(6), to "determin[e] priority purposes for formula grants," *id*., and to ensure that grantees "comply with . . . all other applicable Federal laws," *id*. § 10153(a)(5)(D). The City's counter-arguments are unpersuasive.

First, the City argues that the challenged conditions cannot be authorized by statute because the Byrne JAG Program provides for formula grants rather than discretionary grants. *See* Opp'n at 12-13. But this argument confuses conditions on grant *eligibility*—such as the conditions at issue here—with the *formula* for allocating funds to eligible recipients. Although deviation from the statutory formula for allocating funds among eligible jurisdictions is not permitted except in limited circumstances, *see* 34 U.S.C. §§ 10156-10157, the amount of a jurisdiction's award under that formula is unrelated to whether it has demonstrated its eligibility to receive the funds by complying with conditions authorized by statute. And these conditions of eligibility do less to mandate a "one size fits all" approach than, for example, a Byrne JAG condition that for years has prohibited using award funds to purchase items on a Prohibited Expenditure List that includes various types of equipment and weapons that some law enforcement agencies might otherwise have wanted to acquire. *See* FY 2016 Byrne JAG Award to Philadelphia (Dkt. No. 1-9) ¶ 49.

Second, the City suggests that the Department's theory would confer on the Department "unlimited authority" to impose grant conditions. Opp'n at 13; *see also id*. at 18-19, 21. But there is no dispute that, in exercising its delegated authority to impose "special conditions on," "determin[e] priority purposes for," and require "compl[iance] with . . . all other applicable Federal laws" in connection with Byrne JAG grants, 34 U.S.C. §§ 10102(a)(6), 10153(a)(5)(D), the Department must adhere to the Spending Clause. While Spending Clause authority is undoubtedly "broad," *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006), it is "of course not unlimited," *S. Dakota v. Dole*, 483 U.S. 203, 207 (1987) (citation omitted). A grant

condition must, for example, be germane, non-coercive, and consistent with any independent constitutional requirement. *See id*. at 207-08. Moreover, the Department's conditioning power is self-limiting in practice, because extremism in imposing conditions will cause prospective recipients to reject the grant rather than accept the condition. In addition to those limits, Congress judiciously vested these powers in Senate-confirmed Departmental officers, including the nation's chief law enforcement officer.

Third, the City contends that 34 U.S.C. § 10102(a)(6) is not itself a grant of authority, but only refers to authority that may be granted elsewhere. *See* Opp'n at 13-17. As discussed in the Department's opening brief, however, the authority to "plac[e] special conditions on all grants, and [to] determin[e] priority purposes for formula grants" was added as part of the same legislation that created the Byrne JAG Program. *See* DOJ Reauthorization Act of 2005, Pub. L. No. 109-162, § 1152(b), 119 Stat. 2960 (2006) (adding language to subsection (a)(6)); *id*. § 1111 (creating Byrne JAG Program). The City does not explain why Congress would have added that language, if not to confer the authority described. Another law *already* authorized the Attorney General to delegate the performance of his functions. *See* 28 U.S.C. § 510. The City's interpretation of the amendment thus seemingly gives no practical effect to either the "special condition" or "priority purpose" powers. Yet the legislative history for Section 10102(a)(6) reiterates the broad language of the statute, explaining that the new provision "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005). And "[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995).

Fourth, the City argues that 34 U.S.C. § 10153(a)(5)(D) does not confer authority to impose a condition requiring compliance with 8 U.S.C. § 1373 because, according to the City, the statutory authority to require compliance with "all other applicable Federal laws" refers only to those federal

laws "that by their text govern federal grantees" and Section 1373 is not such a law. Opp'n at 19. The City raised no such challenge when this condition was first imposed on the City in the FY 2016 cycle. And the City now offers no response to the case law the Department adduced demonstrating that courts repeatedly have broadly interpreted the reach of similar statutory language. *See* MTD at 14. Nor does the City rebut that this power sensibly reflects a congressional expectation that a recipient of federal funds may be required to certify its compliance with a federal law with which the recipient is already obligated independently to comply. *See id*. at 15.[1]

Section 10153(a)(5)(D) is properly read to refer to the corpus of federal laws that independently do apply to Byrne JAG grantees—recognizing that such grantees are state and local jurisdictions (not private individuals and entities) as to whom some federal laws are inapplicable. If Congress had intended to limit the term "applicable Federal laws" as referencing only statutes of the kind that the City suggests, it could have done so expressly without requiring resort to the attempts at straightjacketed statutory interpretation that the City offers. The City's invocation of the *ejusdem generis* canon, *see* Opp'n at 19, fails because the structure of the phrase "all provisions of this part and all other applicable Federal laws" in Section 10153(a)(5)(D) "is disjunctive, with one specific and one general category, not . . . a list of specific items separated by commas and followed by a general or collective term." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008). Instead, as Judge Leinenweber found, "the prefatory term in § 10153(a)(5)(D), 'all other,' implies a broader meaning than that tolerated by the City's interpretation." *City of Chicago v. Sessions*,

---

[1]     The Department reiterates, *see* MTD at 13 n.4, that it is important for the Court to decide whether the Section 1373 compliance condition is statutorily authorized—an issue on which the Court did not reach an answer in adjudicating the City's motion for a preliminary injunction earlier in this case. As stated in the Department's opening brief, the Department seeks a ruling that vindicates its statutory authority—but if, alternatively, the Court finds that the condition is not authorized by statute, then this litigation may be streamlined because it would present no occasion at this time to reach the City's request for a declaration that the City complies with Section 1373. The City's opposition brief expresses no disagreement on this score.

264 F. Supp. 3d 933, 944 (N.D. Ill. 2017). Judge Leinenweber also rejected the argument pressed here, *see* Opp'n at 22, that the Department cannot have the power it claims because allegedly the Department has not before asked Byrne JAG grantees to comply with federal laws beyond those governing grantees: rather, the contention "that the Attorney General has not exercised authority does not necessarily speak to whether he possesses it, especially where the statutory terms embrace such an authorization." *City of Chicago*, 264 F. Supp. 3d at 945. The City also attempts to understand Section 10153(a)(5)(D) by referring to failed legislation seeking to tie federal funds to compliance with Section 1373, *see* Opp'n at 23, but the Court should "decline to read any meaning into" such later legislative efforts, as "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *Lockhart v. United States*, 546 U.S. 142, 146-47 (2005) (quotation omitted); *see also United States v. Wise*, 370 U.S. 405, 411 (1962).

Because the Department is authorized under Sections 10102(a)(6) and 10153(a)(5)(D) to impose the challenged conditions, the City's ultra vires and separation of powers claims fail.

## III. The Challenged Conditions Are Not Arbitrary or Capricious.

The challenged conditions are not arbitrary or capricious, because they relate rationally to the Byrne JAG Program's purposes. *See* MTD at 15-17. The City does not respond at all to the initial point that, if the conditions are statutorily authorized and comport with the Spending Clause, it is unclear how "arbitrary or capricious" scrutiny could otherwise limit the Department's broad discretion. *See id*. at 15. The City's argument, in any event, overlooks that this claim draws only a "narrow standard of review" under which "a court is not to substitute its judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citation omitted). The burden is on the City to show that the conditions are arbitrary or capricious, not on the Department to disprove the City's claim. *See Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir.

2015). And the City's claim does not call for litigating a policy dispute over the wisdom of the challenged conditions; rather, "the standard for determining whether an APA violation exists under the arbitrary and capricious standard is substantially similar to rational basis review." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 353 (3d Cir. 2017).

The challenged conditions easily meet this standard. The Byrne JAG Program's authorizing statute specifies that Byrne JAG funds are designed to provide resources "for criminal justice," 34 U.S.C. § 10152(a)(1), defined broadly as "activities pertaining to *crime prevention, control, or reduction*, or the enforcement of the criminal law, including, but not limited to, police efforts to prevent, control, or reduce crime or to *apprehend criminals*, . . . activities of courts having criminal jurisdiction, and *related agencies*," *id*. § 10251(a)(1) (emphases added). Such purposes are rationally advanced by facilitating federal access to aliens who have violated, or are suspected of violating, state or local criminal laws—if for no other reason than that once removed, an alien who has committed a removable criminal offense is undeniably no longer present in this country with the potential to re-offend. *See* 8 U.S.C. § 1227(a)(2) (providing that a criminal conviction for any of a wide array of criminal offenses renders an alien removable).

Further, the challenged conditions rationally promote interests in "maintain[ing] liaison" among tiers of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), and comport with the intergovernmental cooperation that Congress contemplates in immigration enforcement—which cooperation the May 2016 Office of Inspector General report found lacking in various jurisdictions around the country. *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* ("OIG Report") (Dkt. No. 1-10); *see also* 8 U.S.C. §§ 1226(d), 1357(g), 1373; *Arizona v. United States*, 567 U.S. 387, 411-12 (2012) ("Consultation between federal and state officials is an important

feature of the immigration system" and Congress "has encouraged the sharing of information about possible immigration violations.").   As the Department explained in its July 25, 2017 Backgrounder on Grant Requirements, "[i]mproving the flow of information between federal and state law enforcement authorities is paramount to ensuring that federal immigration authorities have the information they need to enforce the law and keep our communities safe."  Dkt. No. 1-1.

## IV.   The Challenged Conditions Are Consistent with the Spending Clause.

The challenged conditions satisfy the Spending Clause's requirements that they be germane to the Byrne JAG Program, provide adequate notice, and not violate any independent constitutional bar.  *See* MTD at 18-24.  On the last of these three requirements, the City's opposition brief abandons the theory in the Amended Complaint that the conditions "arguably require cities to infringe on individuals' Fourth and Fifth Amendment rights."  Am. Compl. (Dkt. No. 84) ¶ 141. The City continues to maintain its other two Spending Clause objections.

**A.**   Attempting to sustain its attack on the conditions as insufficiently related to the purposes of the Byrne JAG Program, the City seeks to impose a more demanding standard than the law directs.  Only "some relationship" is necessary between spending conditions and "the purpose of the federal spending."  *New York v. United States*, 505 U.S. 144, 167 (1992); *see also Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (rejecting "an exacting standard for relatedness").  The Third Circuit requires only "a discernible relationship" between a condition and a federal interest in a program, *Koslow v. Pennsylvania*, 302 F.3d 161, 175 (3d Cir. 2002), and disclaims any requirement that a "condition must be specifically tailored to a particular federal interest" or that it is necessary "to make specific findings of relatedness in the text of the statute itself."  *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 241 (3d Cir. 2003) (citation omitted).

The challenged conditions relate only to aliens who have either committed crimes or are suspected of having committed crimes.  State and local cooperation with the Federal Government

through the provision of basic information and access allows for effective enforcement of federal immigration law against aliens who are criminals or suspected criminals—and thus makes communities safer. The authorization in the Immigration and Nationality Act ("INA") of removal of aliens who commit any of a wide array of criminal offenses, *see* 8 U.S.C. § 1227(a)(2), is part and parcel of law enforcement and criminal justice, if for no other reason than that removal is one of the means by which the Federal Government protects the public and prevents recidivism by criminal aliens. And even if that basic point were not enough, numerous other provisions of the INA also intertwine these two subjects, and/or contemplate cooperation among state and local officers and federal officials on immigration enforcement. *See* MTD at 19-20 (discussing 8 U.S.C. §§ 1226(c), 1231(a)(1)(B), 1252c, 1324(c), 1357(g)).

Beyond supporting the Byrne JAG Program's criminal justice purposes with respect to "efforts to prevent, control, or reduce crime or to apprehend criminals" by "related agencies," 34 U.S.C. § 10251(a)(1), the conditions also comport with the Byrne JAG purposes of ensuring that grantees undertake "appropriate coordination with affected agencies," *id*. § 10153(a)(4), and "report such data . . . and information (programmatic and financial) as the Attorney General may reasonably require," *id*. § 10153(a)(5)(C). The challenged conditions thus directly advance the Byrne JAG Program, and easily clear the low bar for constitutionally-sufficient relatedness.

The City responds that immigration enforcement is a civil matter and thus does not relate sufficiently to criminal justice. *See* Opp'n at 32. This argument fails to account for the federal Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 et seq., which is also "a civil regulatory scheme rather than a criminal one." *United States v. Elkins*, 683 F.3d 1039, 1044-45 (9th Cir. 2012). Notwithstanding SORNA's civil nature, compliance with SORNA is directly tied to Byrne JAG funding. *See* 34 U.S.C. § 20927(a); *United States v. Kebodeaux*, 570 U.S. 387, 398 (2013) (observing with approval that SORNA "used Spending Clause grants to

encourage States to adopt its uniform definitions and requirements"). The relatedness inquiry under the Spending Clause thus plainly allows for the linkage of civil and criminal subject areas.

The City also reasserts its view that the challenged conditions will make cities less safe. *See* Opp'n at 32 n.10, 33. Again, the City bares its desire to litigate the wisest policy, rather than focusing on the narrower legal inquiry that is appropriate. While the City may disagree with the *substance* of the federal policy choices embodied by the challenged conditions, the undeniable *relationship* between these subjects is evident from the City's own positions linking them together.

**B.** The challenged conditions meet the Spending Clause's notice requirement. *See* MTD at 21-23. The City has no response to the point that its premature claim of ambiguity arises before the City has availed itself of administrative consultation that the Byrne JAG Program invites. *See id.* at 21. Nor does the City acknowledge case law showing that its nitpicking about alleged uncertainty at the margins of the conditions' requirements is not the type of ambiguity that raises any constitutional problem. *See* MTD at 23 (citing *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003); *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004)). The City instead insists essentially that because it has alleged there is an ambiguity the Court must allow that theory to proceed (even despite a clarification that the supposed ambiguity is illusory in the face of the plain text of the conditions), *see* Opp'n at 35, and that a condition does not give fair notice when it asks the City to comply with a federal statute (even where that statute has independently governed the City for over twenty years and its meaning is for the courts, not the Department of Justice or the City, to decide), *see id.* at 35-36. The City's criticisms fail.

**V. The Challenged Conditions Do Not Commandeer the City.**

The challenged conditions do not commandeer the City in violation of the Tenth Amendment. *See* MTD at 24-26. The City's opposition nowhere addresses the threshold point that a Tenth Amendment analysis is entirely inapposite here because this case involves a grant that

the City is free to accept or reject, not any federal mandate that directly regulates the City. *See id.* at 24. A "perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants." *Dole*, 483 U.S. at 210; *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) ("As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds."). That point alone disposes of the City's commandeering claim.

The City seeks nevertheless to attack Section 1373 as an independent statutory mandate, but that attack fails on its own merits. Merely protecting the transmission of information to federal authorities does not "compel the State[] to enact or administer a federal regulatory program" or to "act on the Federal Government's behalf." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575, 620 (2012). But Section 1373 *does* ensure that the Federal Government can carry out its statutory responsibilities to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States" and to remove the alien "upon the order of the Attorney General" after completion of criminal sentences. 8 U.S.C. §§ 1227(a), 1228, 1357(a)(1).

The City relies on *Printz v. United States*, 521 U.S. 898 (1997), in arguing that Section 1373 violates the Tenth Amendment. *See* Opp'n at 39-40. But Section 1373 is very different from the Brady Act that was challenged in *Printz*. The Brady Act provisions at issue in *Printz* required local law enforcement officers to "make a reasonable effort to ascertain within 5 business days whether receipt or possession [of a handgun] would be in violation of the law" by conducting research in available databases, and to provide a written statement of the reasons for any contrary determination. 521 U.S. at 903. Section 1373's mere bar against prohibiting or restricting the exchange of information regarding aliens is in no way comparable to the detailed instructions and mandates of the Brady Act, and thus not fairly deemed to force the City "to enact or administer a federal regulatory program." *Id.* at 926. *Printz* itself contrasted federal statutes that "require only

the provision of information to the Federal Government" with those that "force[] participation of the States' executive in the actual administration of a federal program." *Id.* at 918.

## VI.    The City Is Not Entitled to a Declaration That It Complies with 8 U.S.C. § 1373.

The City's request to be declared compliant with Section 1373 is not justiciable, and fails moreover because the City's allegations suggest a violation of Section 1373. *See* MTD at 26-31.

A.    The City's request for a declaration is constitutionally unripe, in that it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). The Department has been conducting an administrative process with the City regarding Section 1373 compliance and has yet to render its final assessment. *See* MTD at 27. In the remainder of that process, the Department could decide that the City does not violate Section 1373 and thus that Byrne JAG funds will not be withheld on that basis. *See id.* In other words, there is an administrative controversy between the parties, but it has not yet reached a conclusion that might justify judicial intervention.

Underscoring the ripeness problem, the City attempts to sustain its claim by inventing actions that clearly have not occurred, complaining of "the Department's decision to deny the City a Byrne JAG Grant based on a purported failure to comply with Section 1373," Opp'n at 43,[2] and asserting that "the Department has already ordered the City to make changes to its policies to come into compliance with Section 1373," *id.* at 45-46. Plainly, neither of these events has occurred; even the City elsewhere characterizes itself as pursuing a "pre-enforcement" challenge. *Id.* at 38.

---

[2]    Even if the Department were to initially deny the City an FY 2017 Byrne JAG award on the basis of non-compliance with Section 1373, the City's request for a declaration still would be unripe because the Department cannot finally deny the City an award without first engaging in a further administrative review with the City. *See* 34 U.S.C. § 10154; *see also Cost Control Mktg. & Mgmt., Inc. v. Pierce*, 848 F.2d 47, 49 (3d Cir. 1988) ("Where Congress has provided a specific statutory administrative procedure, we are reluctant to provide an alternative judicial avenue to a party seeking review of an administrative finding or to one hoping to block an agency from exercising its power to investigate matters within its authority.").

Similarly betraying that the City's position is untenable, the City on one hand argues that this claim is "fit for judicial review"—*i.e.*, ripeness is no barrier—because "the dispute is primarily legal, and the facts are largely not in contention," *id*. at 47, yet on the other hand implores that the City's theories regarding Section 1373 "can best be assessed after factual development" and that an evaluation should "be made on a full factual record," *id*. at 43, 57.

    **B.**    The City's claim for declaratory relief fails in any event because City policy on its face suggests that the City violates Section 1373. The City does not dispute that its Executive Order No. 5-16 restricts the sharing of a detainee's custody release information absent a judicial warrant. And the City has no response to the point that this restriction is not merely an inconsequential procedural hurdle (and thus is substantially non-compliant) because a judicial warrant is not obtainable to the extent that removability is a civil matter for which no judicial warrant is provided for under the immigration laws. *See* MTD at 29-30.[3] The City instead contends wrongly that "information regarding . . . immigration status" under Section 1373 does not cover custody release information. *See* Opp'n at 48-52; *but see* MTD at 29 n.7.

    The City's response attempts to ignore the overall scheme of the INA in relation to aliens who have committed, or are suspected of, state or local crimes—which is crucial to understanding Section 1373. A "fundamental canon of statutory construction" is that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Under the INA, immigration authorities may not, except in limited circumstances, "remove an alien who is sentenced to imprisonment until

---

[3]    The Department also argued that Executive Order No. 8-09 violates Section 1373 because it restricts City officials and employees from disclosing the data on an inmate's country of citizenship that 37 Pa. Code § 95.222 requires the City to collect when admitting each new inmate. *See* MTD at 29. The City's response appears to accept—in tension with its own official's testimony during preliminary injunction proceedings, *see* 10/26/17 Hr'g Tr. (Dkt No. 65-1) at 111:5-12—that the City's policy does not restrict sharing this information. *See* Opp'n at 52-53.

the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4); the immigration removal period "begins on . . . the date the alien is released from [state or local criminal] detention," *id*. § 1231(a)(1)(B)(iii); and federal immigration custody must begin "when the alien is released" from criminal custody, *id*. § 1226(c)(1) (emphasis added). Protecting information-sharing with federal immigration authorities regarding a removable alien's pending release helps ensure that authorities can timely take custody of the alien, as the INA requires, upon release from state or local custody.[4]

The City also contends that no clear statement demonstrates congressional intent here to override the constitutional balance of federal and state powers. *See* Opp'n at 51-52. But the admission, presence, and removal of aliens in the United States are quintessentially federal prerogatives, and the information protected by Section 1373 is needed to carry out the associated responsibilities. Moreover, the City disregards the clear statement in legislative history, running contrary to the City's interpretation, that affirms that Section 1373 "give[s] State and local officials the authority to communicate with [federal immigration authorities] regarding the *presence, whereabouts, and activities* of illegal aliens." H.R. Rep. No. 104-469, pt. 1, at 277 (1996) (emphasis added). Other legislative history admonished "[t]hose who are reluctant to enforce the immigration laws," and declared, in reference specifically to what became Section 1373, that "[e]ffective immigration law enforcement requires a cooperative effort between all levels of government" including the "exchange of immigration-related information by State and local agencies." S. Rep. No. 104-249, at 7, 19-20 (1996). The City now eschews such cooperation.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in the Department's opening brief, the City's Amended Complaint warrants dismissal in its entirety.

---

[4] The City relies on *Steinle v. San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017), regarding the scope of information covered by Section 1373. *See* Opp'n at 49. The court in that case did not, however, have the benefit of the Federal Government's briefing on this issue.

DATED:  February 28, 2018                          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LOUIS D. LAPPEN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

*/s/ Arjun Garg*
ARJUN GARG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I, Arjun Garg, hereby certify that on February 28, 2018 I electronically filed the foregoing document using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

*/s/ Arjun Garg*
ARJUN GARG