UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CITY OF PHILADELPHIA        .    Case No. 2:17-cv-03894-MMB
                            .
          Plaintiff,        .
                            .
                            .    U.S. Courthouse
     v.                     .    601 Market Street
                            .    Philadelphia, PA 19106
JEFERSON BEAUREGARD         .
SESSIONS, III, Attorney     .
General of the United       .
States,                     .
                            .
          Defendants.       .
                            .    February 16, 2018
. . . . . . . . . . . . . . .    4:35 p.m.

                  TRANSCRIPT OF TELEPHONE CONFERENCE
               BEFORE HONORABLE MICHAEL M. BAYLSON
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:              JASMEET AHUJA, ESQ.
                           ALEX BOWERMAN, ESQ.
                           HOGAN LOVELLS LLP
                           1735 Market Street, 23rd Floor
                           Philadelphia, PA 19103

                           MARCEL S. PRATT, ESQ.
                           CITY OF PHILADELPHIA LAW DEPARTMENT
                           1515 Arch Street, 17th Floor
                           Philadelphia, PA 19102

For the Defendant:         ARJUN GARG, ESQ.
                           AUGUST FLENTJE, ESQ.
                           US DEPARTMENT OF JUSTICE
                           10 Massachusetts Avenue NW
                           Washington, DC 20530


Audio Operator:            J. Lutz, ESR



**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

TRANSCRIBED BY:          Eileen Dhondt, CET-807
                         Aequum Legal Transcription Services
                         6934 East Almeria Road
                         Scottsdale, AZ 85257

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

**AEQUUM LEGAL TRANSCRIPTION SERVICES**
**480-241-2841**

INDEX

PAGE:

THE COURT:

Discussion re Document Production                4

Discussion re Interrogatories 18 and 19          7

Setting Dates                                   19

1    PROCEEDINGS

2    (Call to the Order of the Court)

3    (Proceedings commence at 4:35 p.m.)

4    THE COURT:  Okay.  Good afternoon.  Judge Baylson

5  speaking.  I understand we have on the phone from -- from the

6  City Solicitor's Office Marcel Pratt, and from Hogan Lovells

7  Jasmeet Ahuja and Alex Bowerman.  And for the defendant,

8  Attorney General Sessions, we have Mr. Garg and August Flentje.

9  Is that correct?  And I'm here --

10    MS. AHUJA:  That's correct, Your Honor.

11    THE COURT:  And we're here --

12    MR. GARG:  Yes, Your Honor.

13    THE COURT:  -- in chambers.  We're on the record, and

14  we're going to discuss some of the discovery issues that have

15  been presented by different letters and all.

16    Now, let me -- if I understand from the

17  correspondence, neither side has completed production of

18  documents.  Is that -- is that correct, for -- for the City,

19  first of all?

20    MS. AHUJA:  Your Honor --

21    THE COURT:  Or have you produced all of the --

22    MS. AHUJA:  Yeah.  Your Honor, per your --

23    THE COURT:  Yeah.  You have to say your name.

24    MS. AHUJA:  Per your order --

25    THE COURT:  You have to say your name when you start

1  talking.

2        MS. AHUJA:  Yes.  This is Jasmeet Ahuja on behalf of

3  the City of Philadelphia.

4        THE COURT:  Thank you.

5        MS. AHUJA:  Your Honor, per your request in court and

6  then your order, we had produced approximately 762 pages worth

7  of documents.  While they don't -- you know, they don't

8  represent necessarily all of the documents that we may have, we

9  believe we did do due diligence in collecting those documents to

10 ensure that we were responsive to each of their requests for

11 information.

12        THE COURT:  No, I understand that.  But have you -- in

13 your own mind, have you completed the documents that you have

14 that are responsive?  Or are you still holding some that you

15 objected to or otherwise?

16        MS. AHUJA:  No, Your Honor.  We have produced all the

17 documents that are responsive, Your Honor.

18        THE COURT:  Okay.  All right.  Now --

19        MS. AHUJA:  And --

20        THE COURT:  Yeah, go ahead.

21        MS. AHUJA:  -- Your Honor, just to add to that, I

22 spoke with Mr. Garg earlier today, and we have also responded in

23 a supplemental response to Interrogatory Number 4.  So we

24 believe at this point we have also responded to all of the

25 interrogatory requests as well.

1          THE COURT:  Well, okay.  Well, that's good news,

2    assuming Mr. Garg agrees with that.

3          Mr. Garg, is that correct?

4          MR. GARG:  As to Interrogatory Number 4, I have not --

5    that response was just sent to me literally a couple of minutes

6    ago, so I haven't yet even opened it up to look at it.

7          THE COURT:  All right.

8          MR. GARG:  I appreciate it is probably a step in the

9    right direction, but I can't right now, you know, confirm that

10   to be --

11         THE COURT:  All right.  Well, I was going to order the

12   City to answer Interrogatory 4 fully, so I'm glad you have

13   voluntarily done that.

14         But, you know, Mr. Garg, why don't you look it over.

15   And if you have any complaints, call counsel on Monday or

16   Tuesday and try and work it out.  Okay?  But I -- just so --

17         MR. GARG:  Okay.  Thank you.

18         THE COURT:  -- just so the City knows, I think -- I

19   think you did the right thing.  I think the defendant was

20   correct in wanting you to answer that.  Okay?

21         MS. AHUJA:  Yeah.  I think there was a

22   misunderstanding in terms of what was being requested.  And we,

23   to our best of knowledge, to our records, we have answered it

24   now.

25         THE COURT:  All right.  Good.  Now, let's turn to the

1   City's argument, the motion to compel.  The plaintiff actually

2   filed a motion to compel, ECF 113, filed on February 12th.  And

3   this relates to Interrogatories 18 and 19.

4           All right.  Now, my view of this issue is that this

5   relates to an opinion or contention that relates to fact or the

6   application of law to fact, which is covered by Rule 26B, and

7   also in part by Rule 33.

8           But this rule also says that the Court can order that

9   the interrogatory need not be answered until designated

10  discovery is complete or until a pretrial conference at some

11  other time.  But I think this is a -- an important issue in this

12  case, and that the Government should complete its production of

13  documents before I should -- I should require them to answer 18

14  or 19.

15          So, Mr. Garg, what -- what is the status of your

16  document production?

17          MR. GARG:  Your Honor, we filed the administrative

18  record, the complete administrative record, on February 9th.

19  There are four document requests for screenshots that

20  Philadelphia wanted to produce of various law enforcement

21  databases --

22          THE COURT:  Right.

23          MR. GARG:  -- that we have agreed to -- to work on and

24  provide.  Those are in process, but that's all that remains.

25          THE COURT:  Okay.  All right.  Well, if that's true,

1  when do you think you can answer Interrogatories 18 and 19?  And

2  -- and, you know, obviously, you only have to answer them

3  with -- with information that you have.  I understand part of

4  your objection was that you didn't have all of this information.

5  If you don't have it, I mean, that's a valid -- valid answer.

6  And I think some of what you're wanting, particularly

7  as to people who have been arrested under certain circumstances,

8  the City might have better access to than you do.  But I would

9  think that would be something that would be discussed between --

10  between counsel and -- and resolved.

11  But what's your -- what would you like to set as a

12  time for you to answer -- to give your best answer to 18 and 19?

13  MR. GARG:  So, Your Honor, just to give you my

14  perspective on it, my thought was, look, it seems to me like

15  what the City wants to know is what Department of Justice

16  initiates.  Are you going to argue that a person's whereabouts

17  is a basis on which the City is being accused of not complying

18  with 8 U.S.C. 1373?

19  To my mind, that kind of question is -- is one we can

20  resolve sort of in the -- I know we have a hearing -- a final

21  hearing scheduled for April 30th.  It would be as sort of part

22  of the pretrial, you know, statement or pretrial proceedings of,

23  you know, stating here are the issues we intend to present

24  for -- for the final hearing, Judge, and the issues we see at

25  stake.

1          So I sort of understood that to be maybe something we

2    -- you know, we agree that makes sense before we have a final

3    hearing.  This is an issue of, look, if the Department is

4    contending this in this case, let's -- let's hear about it and

5    know it.

6          THE COURT:  Right.

7          MR. GARG:  So I don't know when -- when or if Your

8    Honor had envisioned, you know, pretrial statements or something

9    like that, but my thought would be to -- to include it in that,

10   you know, a -- a final listing of, look, here are the basis on

11   which we expect to argue that the City is or is not complying

12   with -- with Section 1373.

13         THE COURT:  Well, I understand that.  But I think --

14   but here's the thing.  I don't necessarily disagree with what

15   you just said, except that I want to see the exchange of

16   information between the City and the Department of Justice, you

17   know, particularly the access to these databases that we have

18   talked about and the police commissioner talked about,

19   et cetera.

20         So I would think that with access to these things, the

21   information that both of you want is -- is accessible and

22   available.  And I agree with you that we ought to have pretrial

23   statements and things of that nature, and I -- I intend to

24   develop a schedule to that effect probably in a couple of weeks.

25   And before we're done here, I think I'd like to set another

1  conference call for that purpose.

2         But am I correct that if you -- that between the two

3  sides exchanging this information, you would be able to put

4  forth in a pretrial statement what your contentions were under

5  1373?  Each side would, right?

6         MR. GARG:  Well, Your Honor, I guess it -- you know,

7  the way I'm reading the interrogatory, they're not asking, you

8  know, do you think Philadelphia does something specific here?

9  You know, what is it specifically you think Philadelphia has

10  done that -- that you think is not complying with the law?

11        They're asking a more general, abstract kind of, you

12  know, unconnected to any particular facts, do you think

13  Section 1373 covers this type of information?  And the

14  information they're asked about is --

15        THE COURT:  Well --

16        MR. GARG:  -- a person's whereabouts.

17        THE COURT:  Well, let's -- let me ask plaintiff's

18  counsel.  Who wants to respond to that?

19        MR. BOWERMAN:  Your Honor, this is Alex Bowerman, on

20  behalf of the City.  So the -- I wouldn't -- I wouldn't exactly

21  characterize the interrogatories as being unrelated to facts.

22        These are pretty much derived from questions the

23  Department asked during the evidentiary hearing, and it's

24  getting at both the kind of information that the Department is

25  after as well as the I guess kind of communications the

1  Department is contending fall within the scope of 1373.

2      So Interrogatory 18 is state whether it is the

3  Department's position that Section 1373 requires that states and

4  localities allow their employees to respond to all inquiries

5  from ICE regarding an individual's whereabouts.  So it's both

6  the allowing employees to respond and the fact that the topic of

7  the response is a person's whereabouts.

8      THE COURT:  Well, let's just --

9      MR. BOWERMAN:  And Interrogatory 19 --

10     THE COURT:  -- let's just stop there.  All right.

11     MR. BOWERMAN:  Sure.

12     THE COURT:  I consider that what I would call a

13 contention interrogatory, which is appropriate.

14     MR. BOWERMAN:  Yes, Your Honor.

15     THE COURT:  If they're just asking you a pure question

16 of law, I agree interrogatories are not the way to do it.  But I

17 think that is a contention interrogatory that the -- that the

18 Attorney General ought to answer.

19     Now, what's -- but I -- I'm going to give them some

20 time to do it.  What's 19?  I think -- I mean, I have it here,

21 but --

22     MR. BOWERMAN:  19 --

23     THE COURT:  Yeah, go ahead.

24     MR. BOWERMAN:  19, Your Honor, is state whether it is

25 the Department's position that Section 1373 prohibits states and

1   localities from establishing protocol for responses to inquiries

2   about a person's whereabouts.

3            THE COURT:  All right.  Well, once again, that's a

4   contention.  But it is kind of theoretical, and I think it ought

5   to be limited to Philadelphia.  Can you rephrase it and provide

6   a more narrow version that relates directly to what the

7   Department of Justice contends Philadelphia is or is not doing?

8   I think that might --

9            MR. BOWERMAN:  Your Honor?

10           THE COURT:  -- be appropriate.  Yeah?

11           MR. BOWERMAN:  I'm sorry, Your Honor.  I didn't hear

12   the last part.

13           THE COURT:  I think that might be a better way to

14   approach this, if you rephrased it so it applied specifically to

15   Philadelphia.

16           MR. BOWERMAN:  All right, Your Honor.  We -- we can

17   serve a revised version of that interrogatory on the Department.

18           THE COURT:  All right.  All right.  And then I

19   think --

20           MR. GARG:  And Your Honor?

21           THE COURT:  Yes, Mr. Garg?

22           MR. GARG:  Sorry for interrupting, Your Honor.  I

23   would suggest that that kind of limitation of -- of examining

24   this specifically as it relates to Philadelphia is appropriate

25   both for 19 and for 18.  I don't know if Your Honor meant it for

1  both or just for one.

2            THE COURT:  For both.  The more I think about it --

3            MR. GARG:  I appreciate that, Your Honor.

4            THE COURT:  -- I think that would --

5            MR. GARG:  I think that --

6            THE COURT:  I think the more I think about it, the

7  more I think it will be better -- it would be good to do that

8  for both.  Let me just -- hold on one second here.

9       (Pause)

10            THE COURT:  Yeah.  I think it ought to be for both.

11            Now, and let me say one other thing.  You know, I had

12  a brief discussion with Judge Strawbridge, and he appreciated

13  having the meeting that he did, but he wasn't sure whether he

14  had made any progress or not in terms of facilitating exchanging

15  of information.

16       Now, whether -- whether Judge Strawbridge achieves a

17  total settlement of this case is one issue, but more importantly

18  I had designated him to help move along the exchange of

19  information process.

20       Now, he is away for another week, but do you have any

21  plans to meet with him again?  Where does that stand from the --

22  from the City's point of view?

23            MS. AHUJA:  This is Jasmeet Ahuja on behalf of the

24  City.  Your Honor, I believe we left it with Magistrate Judge

25  Strawbridge that he would check with you to determine how you

1    felt would be the best use of his effort.  He had asked us to

2    provide him a letter in response to two questions, and we at

3    least -- the City had done so, but we have not heard back from

4    him regarding if he wanted to have another conference based

5    upon --

6              THE COURT:  Yeah.  He did talk -- well, I was in the

7    middle of a trial, and he did talk to me briefly.  And I said to

8    him --

9              MS. AHUJA:  Okay.

10             THE COURT:  -- that I would like him to have another

11   meeting.

12             MS. AHUJA:  Okay.  The City would be -- would be happy

13   to, particularly if there is amenability to -- to provide the

14   funds.  We would certainly be happy to get to the table again

15   with the Department.

16             THE COURT:  Well, you know, I don't -- you know,

17   that's -- that's a different issue, and I don't mind his

18   discussing that.  But I also wanted him to be sure we're having

19   this exchange of information as to what -- I mean, we -- in view

20   of what took place at the evidentiary hearing, we need to know,

21   as specifically as possible, where the City is not adhering to

22   the statutory requirements regarding criminal aliens and things

23   like that.  I mean, I think that's an important issue under

24   1373.

25             MS. AHUJA:  Your Honor, I don't believe that we

1  necessarily focused on that issue.  As you know, at the start of

2  the conference, the Judge had asked us both to submit letters

3  outlining what we deemed were the areas or policies where there

4  may be disputes, where our practices might not align with what

5  the Department wants, and so we had provided that to him.

6           I think one area of concern for the Department I

7  believe we addressed, and that relates to the types of warrants

8  we comply with.  We clarified that as long as a detainer is

9  accompanied by a federal criminal warrant, we will comply with

10 that detainer.  I believe that the Department was unsure whether

11 we would or not and whether it had to be based on some sort of

12 first- or second-degree conviction.  We clarified that it does

13 not.

14           THE COURT:  Right.

15           MS. AHUJA:  But beyond that, we had concerns, as we

16 had previously, into the interpretation of what 1373

17 encompasses.

18           THE COURT:  Right.

19           MS. AHUJA:  We believe, as you know, that based upon

20 the nationwide injunction issued in Chicago, and the failure of

21 the Department's ability to attach the condition related to --

22 of the notification, the Department is now attempting to -- to

23 be crass, shoehorn that -- that particular condition into 1373,

24 making, you know, the terms "citizenship" and "immigration

25 status" mean something different than that, meaning now advance

1   notification of one's release from prison.

2          And if that's the case, if that is now the new

3   interpretation, and this goes to our Interrogatories 18 and 19

4   that we were discussing, that we -- we would, obviously, come to

5   even larger disputes.  But that doesn't relate to Philadelphia's

6   policies.  That doesn't relate to Philadelphia's practices.

7   Indeed, that relates to the gloss interpretation that the

8   Department is now putting on a plain statute, an interpretation,

9   as you know, that the --

10         THE COURT:  Well, let's -- let's not -- I don't want

11  to get into detailed argument.

12         MS. AHUJA:  Certainly.

13         THE COURT:  But, you know, I didn't think the Chicago

14  judge entered an injunction on 1373.  I feel like he --

15         MS. AHUJA:  Well, Your Honor, it was -- he entered the

16  injunction on the advance notification condition.

17         THE COURT:  Right.  No, I think you're right.

18         MS. AHUJA:  But because --

19         THE COURT:  I understand that.

20         MS. AHUJA:  -- they weren't able --

21         THE COURT:  Okay.

22         MS. AHUJA:  -- they have now expanded the

23  interpretation of what 1373 encompasses.

24         THE COURT:  All right.  Well, look, let's just get

25  back to exchange of information.  That's --

1       MS. AHUJA: Yeah.

2       THE COURT: All right. But I know you discussed

3  payment of the money with Judge Strawbridge, and he --

4       MS. AHUJA: Yeah.

5       THE COURT: -- he reported back that that was -- he

6  didn't make any progress on that, and --

7       MS. AHUJA: Oh, okay.

8       THE COURT: -- you know, that's a separate issue from

9  the exchange of information. And so that's what I would like

10 him to focus on.

11      Mr. Garg, can -- I don't -- I forget if you told me if

12 you were there or not with the meeting in his chambers.

13      MR. GARG: I was there, Your Honor.

14      THE COURT: All right.

15      MR. GARG: I was there, Your Honor, yes.

16      THE COURT: All right. Well, would you -- I would

17 like to find out -- I would like to encourage you to -- and if I

18 have to put something in writing about ICE I'll do it, but I

19 would -- you know, I think Judge Strawbridge, the way he relayed

20 it to me, he wasn't sure that ICE was going to go along with the

21 request for more information that the City was after. And if

22 I'm wrong in that, tell me so.

23      MR. GARG: I don't think that's accurate. Your Honor,

24 just for your awareness, there were two representatives from ICE

25 who work in the City of Philadelphia --

1              THE COURT:  Right.

2              MR. GARG:  -- at this meeting.

3              THE COURT:  He told --

4              MR. GARG:  There was also a representative from the

5    U.S. Attorney's Office.

6              THE COURT:  Yeah, he told me that.

7              MR. GARG:  So we definitely came prepared to talk to

8    whatever it is.  I think from our perspective we are sort of

9    waiting on follow up from Judge Strawbridge as to whatever the

10   next steps are going to be.  As my opposing counsel mentioned we

11   each -- each side sent a letter to him at his request earlier

12   this week, and I understood he was going to be out of town until

13   the 21st.

14             THE COURT:  Right.  That's right.

15             MR. GARG:  And so I think we're just sort of waiting

16   for guidance about what to do next.

17             THE COURT:  Okay.  All right.

18             MR. GARG:  So we're still happy to participate in

19   whatever process you tell us is going on.  We are just sort of

20   wait and see mode right now.

21             THE COURT:  Okay.  All right.  That's fine.  I'll be

22   in touch with them.  I'm going to tell him about this phone call

23   and encourage him to have another get-together with you and ICE

24   and the City.  Okay?

25             And I think it's important that we -- everybody knows

1  what information they have and what the other side has, and that

2  -- part of Judge Strawbridge's job is to try and bridge any gaps

3  that one side or the other might perceive.  Okay?  At least

4  that's what I'm going to tell him.

5          Anything else we need to discuss today?

6          MS. AHUJA:  Just where are we, Your Honor?  So as I

7  understand it, the way we've ended is Philadelphia is going to

8  provide DOJ with revised interrogatories specifying

9  specifically --

10          THE COURT:  Yes.

11          MS. AHUJA:  -- as they relate to Philadelphia.

12          THE COURT:  Yeah.  18 and -- well, 18 and 19.

13          MS. AHUJA:  Correct.

14          THE COURT:  Yeah.

15          MS. AHUJA:  And is there a deadline for that?

16          THE COURT:  Well, I'd like there to be.  I mean, how

17  about one week from today?  I mean, do you need that much time?

18          MS. AHUJA:  We -- I mean, we can submit it today.  I'm

19  just wondering if there are deadlines for when we can get a

20  response.

21          THE COURT:  Well, Mr. Garg, how much time do you want

22  for a response?

23          MR. GARG:  I think we'd appreciate a couple of weeks.

24          THE COURT:  All right.

25          MR. GARG:  So, I mean, if you could make it March 2nd.

1          THE COURT:  All right.  March 2nd.  All right.  I'll

2    issue an order to that effect.  Okay?

3          MS. AHUJA:  Your Honor, can you also, in terms of the

4    outstanding nine discovery requests, both the screen -- well,

5    the screenshots and a few other answers you were going to

6    provide with respect to unanswered interrogatories, can we get a

7    date for those as well as to when the Department will respond?

8    We had suggested February 28th, Your Honor, in our letter.

9          THE COURT:  Mr. Garg?

10          MR. GARG:  I would suggest, again, March 2nd.  My one

11    concern with February 28th is, as you know, Judge, we have

12    briefs due in this case on that day.  I also have a brief due in

13    the Chicago case on that day.

14          THE COURT:  All right.

15          MR. GARG:  I've just got a deadlines stacked on me --

16          THE COURT:  That's okay.

17          MR. GARG:  -- on the 28th.

18          THE COURT:  March 2nd is fine.

19          MS. AHUJA:  Okay.

20          THE COURT:  All right.

21          MS. AHUJA:  Thank you, Your Honor.

22          THE COURT:  Okay.  I'll issue a short order on that.

23    All right.  Thank you.

24          All right.  Have a nice weekend, everybody.  Thanks

25    for calling in.

1          MR. GARG:  Thank you, Your Honor.

2          MS. AHUJA:  Thank you very much, Your Honor.

3          THE COURT:  I think we ought to get a copy of this

4   transcript.  So would the City order it, please?

5          MS. AHUJA:  Yes.  We'll order it, Your Honor.

6          THE COURT:  Thank you.

7          MS. AHUJA:  Thank you.

8          THE COURT:  Bye now.

9          MS. AHUJA:  Bye-bye.

10      (Proceedings concluded at 4:56 p.m.)

## CERTIFICATION

I, EILEEN DHONDT, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


EILEEN DHONDT, CET 807
Aequum Legal Transcription

Dated:  February 22, 2018