**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| The City of Philadelphia,<br>        Plaintiff,<br><br>        v.<br><br>Jefferson Beauregard Sessions III,<br>Attorney General of the United States,<br>        Defendant. | CIVIL ACTION<br><br><br>NO. 17-3894 |

<u>MEMORANDUM RE: MOTION TO DISMISS</u>

Baylson, J.                                                    March __13__ , 2018

## I.      Introduction

In this action, Plaintiff City of Philadelphia, which has in place policies that "seek to foster trust" between immigrants and officers of the City, challenges the recent imposition by Defendant Jefferson Beauregard Sessions III, Attorney General of the United States, of three immigration-related funding conditions on receipt of federal law enforcement aid under the Byrne Justice Assistance Grant ("JAG") program.  (Am. Compl. ¶ 2, ECF 84.)

The City alleges that the Attorney General cannot legally or constitutionally condition JAG Program funds on 1) requiring federal immigration agents access to City detention facilities (the "Access Condition"); 2) providing the Department of Homeland Security ("DHS") at least 48 hours' advance notice of the date and time of the release of any inmate about whom DHS has requested such information (the "Notice Condition"); and 3) certifying compliance with 8 U.S.C. § 1373 ("Certification Condition"; collectively, the "Challenged Conditions").  The City asserts the following six counts in its Amended Complaint:

Count I asserts that the Attorney General acted *ultra vires* and in violation of the Administrative Procedure Act by imposing the Challenged Conditions. (Am. Compl. ¶¶ 113–21, ECF 84).

Count II asserts that the imposition of the Challenged Conditions by the Attorney General violated the Administrative Procedure Act because the Challenge Conditions contravene the separation of powers.  (Id. ¶¶ 122-31.)

Count III alleges that the Attorney General's imposition of the Challenged Conditions constituted arbitrary and capricious agency action in violation of the Administrative Procedure Act.  (Id. ¶¶ 132-35.)

Count IV alleges that the Challenged Conditions are invalid under the Spending Clause of the U.S. Constitution.  (Id. ¶¶ 136-43.)

Count V asserts that the Challenged Conditions unconstitutionally seek to commandeer City officials into the enforcement of federal immigration law in violation of the Tenth Amendment.  (Id. ¶¶ 144-50.)

Count VI seeks a declaration by this Court that the City is in compliance with 8 U.S.C. § 1373, as constitutionally construed. (Id. ¶¶ 151-57.)

The City also seeks to enjoin the Challenged Conditions, asks this Court to declare that the Challenged Conditions are unconstitutional, and requests a writ of mandamus requiring the Attorney General to disburse the City's fiscal year 2017 Byrne JAG award.

For the reasons stated below, the Court **DENIES** the Attorney General's motion to dismiss the Amended Complaint.

## II.    Background

### A.  Byrne JAG Program

The following facts are taken as true from the City's Amended Complaint.  (ECF 84.) The federal funding program at issue in this case is the Edward Byrne Memorial Justice Assistance Grant Program (the "JAG Program" or the "Byrne Program"), which was formed in 2005 from a merger of the Edward Byrne Memorial Formula Grant Program and the Local Law Enforcement Block Grant Program.  (Id. ¶ 57.)   The Byrne JAG Program is a formula grant, whose authorizing statute, 34 U.S.C. § 10151, *et seq.*, allows states and localities to use grant awards for a wide variety of purposes, such as personnel, equipment, training, and other criminal justice needs.  (Id. ¶ 59 (citing 34 U.S.C. § 10152.))  Since the Edward Byrne Memorial Justice Assistance Grant program was created in 2005, the City has applied for, and received, awards each year.  (Id. ¶ 4.)  The City plans to use its FY 2017 funds to provide use-of-force training to officers, support collaborations with inner-city youth, and provide doses of naloxone to Philadelphia police officers to counteract opioid overdoses.  (Id. ¶ 66.)

### B.  The Challenged Conditions

In 2016, the Office of Justice Programs added a condition on Byrne JAG funds, applicable to fiscal year 2017 and thereafter, requiring applicant jurisdictions to certify compliance with 8 U.S.C. § 1373 (the "Certification Condition").   (Id. ¶¶ 77-79.)  8 U.S.C. § 1373, entitled "Communication between government agencies and the Immigration and Naturalization Service," prohibits local government and law enforcement officials from restricting the sharing of information with federal immigration officials regarding the citizenship status of any individual as follows:

(a) In General
Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way

restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) Additional Authority of Government Entities
Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

> (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
> (2) Maintaining such information.
> (3) Exchanging such information with any other Federal, State, or local government entity.

(c) Obligation to Respond to Inquiries
The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

Philadelphia certified its compliance with 8 U.S.C. § 1373 on June 22, 2017.  (Am. Compl. ¶ 11.)

In late July 2017, the Attorney General announced two new conditions on every grant provided by the JAG Program. (Id. ¶ 5.) The two new conditions require, first, that local authorities provide federal agents advance notice of the scheduled release from state or local correctional facilities of certain individuals suspected of immigration violations (the "Notice Condition"), and, second, that local authorities provide immigration agents with access to City detention facilities and individuals detained therein (the "Access Condition"). (Id.)

The Office of Justice Programs described the three new conditions applicable to JAG recipients as follows:

**The Notice Condition**
A State statute, or a State rule, regulation, policy, or practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility

receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and—as early as practicable—provide the requested notice to DHS.

**The Access Condition**
A State statute, or a State rule, regulation, policy, or practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access to any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

**The Certification Condition**
The applicant local government must submit the required "Certification of Compliance with 8 U.S.C. § 1373" (executed by the chief legal officer of the local government).

(Award Letter to Greenville, SC at ¶¶ 52, 55, ECF 21-6.)

## C. Philadelphia Policies

Philadelphia has a number of policies in place intended to "engender trust with the City's immigrant community" that are relevant to this case and the Challenged Conditions. (Am. Compl. ¶ 24.)

### 1. Police Department Memorandum 01-06

In 2001, the Philadelphia Police Department issued a memorandum prohibiting its officers from unnecessarily disclosing individuals' immigration status, subject to three exceptions: "(1) required by law, or (2) the immigrant requests, in writing, that the information be provided, to verify his or her immigration status, or (3) the immigrant is suspected of engaging in criminal activity, including attempts to obtain public assistance benefits through the use of fraudulent documents." (Mem. 01-06 at 1-2, ECF 1-3.)  Memorandum 01-06 states also that "[t]he Philadelphia Police Department will continue to cooperate with federal authorities in investigating and apprehending immigrants suspected of criminal activities. However,

immigrants who are victims of crimes will not have their status as an immigrant transmitted in any manner."  (Id. at 2.)

### 2.  "Confidentiality Order"

In 2008, then-mayor Michael Nutter signed the "Confidentiality Order," Executive Order 08-09, which prevents city officers outside of law enforcement from "inquir[ing] about a person's immigration status unless: (1) documentation of such person's immigration status is legally required for the determination of program, service or benefit eligibility or the provision of services; or (2) such officer or employee is required by law to inquire about such person's immigration status." (Exec. Order 08-09 at 2, ECF 1-4.)  With respect to law enforcement, the Confidentiality Order states that "Law enforcement officers shall not:

…

> (2) inquire about a person's immigration status, unless the status itself is a necessary predicate of a crime the officer is investigating or unless the status is relevant to identification of a person who is suspected of committing a crime (other than mere status as an undocumented alien);
> (3) inquire about the immigration status of crime victims, witnesses, or others who call or approach the police seeking help; or
> (4) inquire regarding immigration status for the purpose of enforcing immigration laws.

(Id.) The following section ordered law enforcement officers "to cooperate with state and federal authorities in investigating and apprehending individuals who are suspected of criminal activity."

(Id.)

### 3.  Executive Order 5-16

In 2016, Mayor James F. Kenney signed Philadelphia Executive Order No. 5-16, which outlined the circumstances under which Philadelphia prison facilities honor requests to hold inmates pending immigration proceedings.  Executive Order 5-16 states in Section 1:

> No person in the custody of the City who otherwise would be released from custody shall be detained pursuant to an ICE civil immigration detainer request pursuant to 8 C.F.R. § 287.7, nor shall notice of his or her pending release be provided, unless such person is being released after conviction for a first or second degree felony involving violence and the detainer is supported by a judicial warrant.

(Exec. Order 5-16 at 1-2, ECF 1-6.)   A subsequent memorandum issued to the Prisons Commissioner clarified that "the Department of Prisons is directed to cooperate with all federal agencies, including ICE, when presented with a judicial warrant," irrespective of whether "such person is being released from custody after conviction for a first or second degree felony involving violence." (Am. Compl. ¶ 47).

### 4.  ICE Interview Protocol

In 2017, the Philadelphia Department of Prisons implemented a new policy allowing ICE to interview inmates only if the inmate consents in writing.  (Id. ¶ 52.)  When ICE seeks to interview a prisoner, the Philadelphia Department of Prisons provides a consent form informing the inmate that "ICE interviews are voluntary"; "[y]ou have the right to remain silent"; "[y]ou may request to have an attorney present during any interview"; and "[i]f you are already in removal (deportation) proceedings, you have the right to have your immigration lawyer present during any questioning."  (Id.; ICE interview consent form, ECF 1-8.)

### 5.  Participation in Federal Databases

Philadelphia law enforcement employ several case management databases visible to or managed by federal law enforcement agencies, which "provide[] the federal government notice about—and identifying information for—persons stopped, detained, arrested, or convicted of a crime in the City."  (Am. Compl. ¶ 55.)  The federal government, in turn, "can use information derived from those databases to obtain knowledge about undocumented persons of interest in the City."  (Id.)  Shared databases include the Preliminary Arraignment Reporting System (PARS),

the Automated Fingerprint Information System (AFIS), and the National Crime Information Center (NCIC).   (Id.)   The City asserts that ICE generates detainer requests based on the information used in AFIS, which is maintained by the FBI.   (Id. ¶ 56.)

III.   **Procedural History**

On August 30, 2017, the City filed a six-count Complaint in this Court (ECF 1).   On September 28, 2017, the City filed a Motion for Preliminary Injunction (ECF 21).   The Attorney General responded to the City's Motion on October 12, 2016 (ECF 28) and the City replied on October 19, 2017 (ECF 46).   Several amicus briefs were filed in support of the City's Motion for a Preliminary Injunction (Brief of County of Amici Curiae Santa Clara et al., ECF 45; Brief of Amici Curiae Philadelphia Social and Legal Services Organizations, Philadelphia ECF 49; Brief of Amici Curiae Administrative Law, Constitutional Law, and Immigration Law Scholars, ECF 50; Brief of Amici Curiae ACLU, et al., ECF 52).

This Court held an evidentiary hearing on the Motion for Preliminary Injunction on October 26, 2017, during which testimony was received from multiple City officials.   Oral argument on the Motion for Preliminary Injunction occurred on November 2, 2017.   On November 15, 2017, this Court issued a memorandum and order granting the requested Preliminary Injunction.   (ECF 74, 75.)   The memorandum concluded that the City was likely to succeed in its claims that the Challenged Conditions are unconstitutional under the Spending Clause, the Tenth Amendment, and general principles of federalism.   Additionally, this Court concluded that the City had demonstrated that it was likely to succeed in proving that it is in substantial compliance with Section 1373, and as such, can properly certify its compliance with the Byrne JAG condition requiring as much.   As a result, this Court issued an order preliminarily enjoining the Attorney General from rejecting the City's application for FY 2017 Byrne JAG funding, or withholding any FY 2017 Byrne JAG funding from the City on the basis of lack of

8

compliance with Section 1373.  The Attorney General appealed the Preliminary Injunction to the Third Circuit on January 16, 2018 (ECF 86), which appeal is now pending.

The City filed an Amended Complaint on January 8, 2018 (ECF 84), stating six causes of action:

I.   Violation of the Administrative Procedure Act through *Ultra Vires* conduct not authorized by Congress in the underlying statute;

II.   Violation of the Administrative Procedure Act through violation of the Constitution's separation-of-powers;

III.   Violation of the Administrative Procedure Act through arbitrary and capricious agency action;

IV.   Violation of the Spending Clause;

V.   Violation of the Tenth Amendment by Commandeering;

VI.   Seeking an order that Philadelphia Complies with 8 U.S.C. § 1373 under the Declaratory Judgment Act.

This Court appointed the Honorable David R. Strawbridge, United States Magistrate Judge, to serve as a Master in this case under Fed. R. Civ. P. Rule 53, on January 18, 2018 (ECF 88).

On February 2, 2018, the Attorney General filed a Motion to Dismiss all six Counts of the Amended Complaint (ECF 102).  The City responded on February 16, 2018 (ECF 119), and the Attorney General replied on February 28, 2018 (ECF 130).  An amicus brief was filed by the States of New York, et al. in support of the City's Opposition to the Motion to Dismiss (ECF 126).[1]

---

[1] Litigation over the legality of so-called "sanctuary" jurisdictions is ongoing nationwide.  In addition to the Chicago litigation described in the Court's memorandum regarding the preliminary injunction, the State of California, also a Byrne JAG recipient, seeks a declaration that 8 U.S.C. § 1373, as construed by DOJ, is unconstitutional and an injunction against the Compliance Condition.  On March 5, 2018, a judge of the U.S. District Court for the Northern

## IV.     Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  While courts generally may not consider matters outside the pleadings when ruling on a motion to dismiss, "[a] limited exception exists for documents that are '*integral to or explicitly relied* upon in the complaint.'"  W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010).  See also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

When considering a defendant's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a court "treat[s] the allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff."  Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 538 (3d Cir. 2017) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001)).

---

District of California declined to issue a preliminary injunction, ruling that "the record [was] not sufficient at this stage to determine that State has shown a likelihood of success on the merits" and the State had not shown irreparable harm.  State ex rel. Becerra v. Sessions, No. 17-CV-04701-WHO, 2018 WL 1156774, at *16 (N.D. Cal. Mar. 5, 2018).  Two days later, on March 7, 2018, the Attorney General announced a lawsuit against the State of California, alleging that several immigration-related state laws are preempted by federal law.  See, Press Release, "Justice Department Files Preemption Lawsuit Against the State of California to Stop Interference with Federal Immigration Authorities" (Mar. 7, 2018):  https://www.justice.gov/opa/pr/justice-department-files-preemption-lawsuit-against-state-california-stop-interference

## V.       Discussion

### A. Ripeness

The Attorney General asserts that all Counts in the Amended Complaint should be dismissed on the basis that they are not ripe for this Court's consideration.  Because this attack is lodged against all Counts in the Amended Complaint, we address it first.

In order for an APA challenge to be ripe for judicial review the challenged agency action must 1) "mark the 'consummation' of the agency's decisionmaking process" and 2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Ocean Cty. Landfill Corp. v. U.S. E.P.A., Region II, 631 F.3d 652 655 (3d Cir. 2011) (quoting Bennett v. Spear, 520 U.S. 154, 177-178 (1997)).

The Attorney General asserts that the Amended Complaint fails to identify any "final agency action" for this Court to review, a requirement for judicial review under the Administrative Procedure Act (APA).  (Def. Br. in Support of Mot. to Dismiss ("Def. Br.") at 9, ECF 102.)  The Attorney General asserts that DOJ has not yet made a decision in response to the City's FY 2017 Byrne JAG funding application, and as such could not possibly have imposed conditions on the grant of an award that has not yet been granted.  (Id.)

The City argues that the first requirement is met by the allegations that the Challenged Conditions were included in the JAG award to Greenville, South Carolina, which the DOJ represented in the Chicago litigation would provide the terms for every FY 2017 JAG grant, and that the DOJ represented at oral argument in this Court that it will not grant Philadelphia a JAG award until the Chicago appeal is "resolved." (Pl. Br. in Op. to Def.'s Mot. to Dismiss ("Pl. Br.") at 11, ECF 119.) As to the second requirement, the City argues that as a result of the DOJ's imposition of the Challenged Conditions the City must either certify compliance or forgo the grant, which constitutes a legal consequence. (Id. at 12.)

The City has alleged facts to properly make out final agency action on the part of the DOJ in imposing the Challenged Conditions on the FY 2017 at the Motion to Dismiss stage.  The Amended Complaint alleges that prior to the application deadline for FY 2017 Byrne JAG grants the DOJ publicly announced that all grant recipients must comply with all three of the Challenged Conditions—the Section 1373 condition, the advance notification condition, and the jail access condition.  (Am. Compl. ¶¶ 92, 97.)  The Amended Complaint further alleges that if it is required to comply with these conditions as the DOJ construes them in order to receive its grant money, the City will have to significantly alter its policies, to the detriment of public health and safety.  (Am. Compl. ¶ 107.  )

As this Court observed in the Preliminary Injunction Memorandum, the Attorney General's decision to impose the conditions "represents the agency's definitive position on the question," such that it is now "final" and ripe for this Court's review.  Univ. of Med. & Dentistry of N.J. v. Corrigan, 347 F.3d 57, 69 (3d Cir. 2003); see Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967).

Finding that the City has properly alleged at the Motion to Dismiss stage that this controversy and all six Counts are ripe for our consideration, we now turn to an evaluation of the viability of each Count.

**B. Count I: Violation of the Administrative Procedure Act through *Ultra Vires* conduct not authorized by Congress in the underlying statute**

Count I asserts that DOJ's imposition of the Challenged Conditions violated the Administrative Procedure Act as *ultra vires* conduct not authorized by Congress in the Byrne JAG statute, which establishes the Byrne JAG program as a formula grant.  (Am. Compl. ¶¶ 113-21, ECF 84.)  The APA commands courts "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" 5 U.S.C. § 706(2)(A), and the City seeks injunctive, declaratory, and mandamus relief for the Attorney General's *ultra vires* conduct.

The positions of the parties in the briefing on the motion to dismiss largely mirror the arguments made at the preliminary injunction phase.

The Attorney General argues that pursuant to 34 U.S.C. § 10110(2), the Attorney General possesses "final authority over all functions, including any grants, cooperative agreements, and contracts made, or entered into, for the Office of Justice Programs," which is headed by an Assistant Attorney General pursuant to 34 U.S.C. § 10101; in turn, the Assistant Attorney General overseeing the Office of Justice Programs may "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6).

The Attorney General locates an additional source of support for the Certification Condition in the Byrne JAG statute itself, which requires that applications from jurisdictions seeking funding shall include a certification that "the applicant will comply with all provisions of this part and <u>all other applicable Federal laws</u>." 34 U.S.C. § 10153(a)(5)(D) (emphasis added). The Attorney General considers 8 U.S.C. § 1373 to be an applicable federal law, making certification of compliance authorized by the Byrne JAG statute.

The City responds that the Byrne JAG program is a formula-based award rather than a discretionary program, and neither 34 U.S.C. § 10102(a)(6) nor 34 U.S.C. § 10153(a)(5)(D) grants authority to the Attorney General to impose additional conditions on Byrne JAG awards. Specifically, the City considers the ability of the <u>Assistant</u> Attorney General, pursuant to 34 U.S.C. § 10102 (a)(6), to "plac[e] special conditions on all grants, and determin[e] priority

purposes for formula grants" not to create an independent source of authority for the Attorney General to impose conditions of his choosing in the absence of any Congressional delegation of authority to the Attorney General or independent source of authority elsewhere in Chapter 101 for the Assistant Attorney General to impose the Challenged Conditions.  The City considers the phrase "all other applicable Federal laws" in 34 U.S.C. § 10153(a)(5)(D) as referring only to federal grantmaking laws, which would not include 8 U.S.C. § 1373; thus, conditioning Byrne JAG awards on certifying compliance with 8 U.S.C. § 1373 is not authorized by statute.

Taking all the facts in the Amended Complaint as true, the Court concludes, as it did in its memorandum regarding the preliminary injunction, that 34 U.S.C. § 10102 (a)(6) is not a source of statutory authority for the Challenged Conditions for all of the reasons the Court identified in its earlier memorandum.  See City of Philadelphia v. Sessions, 280 F. Supp. 3d 579 at *26-27 (E.D. Pa. 2017).  The Attorney General's attempt in its most recent briefing to invoke the Attorney General's "final authority over all functions, including any grants…for the Office of Justice Programs" under 34 U.S.C. § 10110(2) cannot plausibly be read as a Congressional grant of authority to the Attorney General to delegate the ability to impose the Challenged Conditions to the Assistant Attorney General.  Most naturally read, this statutory subsection simply establishes chains of command at the Department of Justice, with the Attorney General ultimately accountable for the activities of a subordinate department.

With respect to the issue of whether 34 U.S.C. § 10153(a)(5)(D) allows the Attorney General to require certification with 8 U.S.C. § 1373, the Court reiterates its earlier discussion from the memorandum on the preliminary injunction:

> The statutory language is far from unambiguous as it applies to the present case, as it is unclear whether Congress intended to permit the Attorney General to require certification from JAG Program applicants on "Federal laws" in contexts beyond the awarding of federal grants…whether the Certification Condition falls

inside or outside the Attorney General's Congressionally-delegated authority turns on the phrase, "all other applicable Federal laws."

City of Philadelphia v. Sessions, 280 F. Supp. 3d 579 at *29 (E.D. Pa. 2017).

At the preliminary injunction stage, the Court concluded that it was a "close call" as to whether 8 U.S.C. § 1373 fell within the ambit of the "all other applicable Federal laws" language of 34 U.S.C. § 10153(a)(5)(D).  Sessions, 280 F. Supp. 3d 579 at *29.  The City continues to present an eminently plausible reading of this language, and the Court therefore denies Defendant Sessions' motion to dismiss Count I of the Amended Complaint, without deciding the legal issue.

## C. Count II: Violation of the Administrative Procedure Act through violation of the Separation of powers

Count II asserts that DOJ's imposition of the Challenged Conditions violated the Administrative Procedure Act by contravening the separation of powers.

The Attorney General argues that imposition of the Challenged Conditions did not violate the separation of powers because it was acting pursuant to statutory authority.  The City responds that by "imposing conditions on federal spending that Congress itself has not, the Attorney General has usurped Congress' appropriations power."  (Pl. Br. at 24.)  The City argues that imposition of the Challenged Conditions amounts to an unconstitutional refusal to disburse funds that Congress had already appropriated, in violation of the President's duty to "take Care that the Law be faithfully executed," see U.S. Const. art. II, § 3, cl. 5, and the Presentment Clause of the U.S. Constitution.

The City's briefing rests on basic premises of constitutional law: Congress makes the laws, and the Executive Branch enforces them.  Article I of the U.S. Constitution states that "[t]he Congress shall have Power…to…provide for the…general Welfare of the United States."

15

U.S. Const. art. I, § 8, cl. 1.  In turn, the President is obligated to "take Care that the Law be faithfully executed."  U.S. Const. art. II, § 3, cl. 5.

By establishing the Byrne JAG program, Congress established a formula grant program for applicant states and localities to receive funds.  See 34 U.S.C. § 10156 (establishing formula). Imposing grant conditions that Congress did not authorize, as discussed above, and denying duly appropriated funds for failure to satisfy those unilaterally imposed conditions is not the sort of "faithful[] execut[ion]" of the laws that Article II requires of the Executive.  The U.S. Supreme Court has held that the executive branch cannot withhold Congressional appropriations to states and localities.  See Train v. City of New York, 420 U.S. 35, 44 (1975) (where Congress appropriated an amount "not to exceed" $5 billion and $6 billion for local sewer maintenance for fiscal years 1973 and 1974, the president acted improperly in explicitly ordering the EPA to disburse only $2 billion and $3 billion in those years where statute did not provide such discretion); see also In re Aiken Cty., 725 F.3d 255, 261 (D.C. Cir. 2013) ("a President sometimes has policy reasons…for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds").

Taking the facts in the Amended Complaint as true, the Court finds that the City has plausibly stated a claim for an APA violation due to DOJ's violation of the separation of powers, and denies the Attorney General's motion to dismiss Count II.

### D. Count III: Violation of the Administrative Procedure Act through Arbitrary and Capricious Agency Action

In Count III of its Amended Complaint, the City alleges that the imposition of the Challenged Conditions on the receipt of FY 2017 Byrne JAG funds was arbitrary and capricious, in violation of the APA.

16

Seeking to dismiss Count III, the Attorney General argues that the City has not properly stated a claim under the APA because the conditions comport with the Spending Clause and are authorized by statute, and against this background it would be unreasonable to conclude that the decision to impose them was arbitrary and capricious.  (Def. Br. at 15.)  Additionally, the Attorney General asserts that the Department acted rationally in imposing the Challenged Conditions, and clearly explained its reasoning for doing so.  (Def. Br. at 16-17.)

The City responds that they have properly stated a claim that the decision was arbitrary in that they have alleged three reasons establishing as much: first, the Department's stated reasons for imposing the conditions are not borne out by the actual impact of those conditions; second, the Attorney General has not explained the decision to impose the conditions in light of the ample evidence that doing so would impede the purpose of the Byrne JAG program; and third, the Attorney General has failed to explain the shift in the DOJ's position. (Pl. Br. at 25-27.)

The APA explicitly exempts grants from the statutory rulemaking requirements that apply to most agency action.  5 U.S.C. § 553(a)(2).  Nevertheless, some general procedural standards apply to agency action relating to grants.  Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal quotation omitted); Encino Motorcars, LLC v. Navarro, 136 S.Ct. 2117, 2125 (2016) ("[A]n agency must give adequate reasons for its decisions.").  An agency rule will be found to be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.   Additionally, reversal or alteration of policy that constitutes an "unexplained inconsistency" can lead to a finding that the new policy is arbitrary and capricious. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005).

The City alleges that in the spring of 2016 the Inspector General conducted an investigation into whether jurisdictions that receive DOJ funding were in compliance with Section 1373, and ultimately produced a report indicating concern with the level of compliance. (Am. Compl. ¶¶ 75, 76.) Following the report, the Assistant Attorney General announced that in response to this report the Office of Justice Programs determined that Section 1373 is an "applicable" federal law under the Byrne JAG program, and that JAG grantees must certify compliance with Section 1373. (Am. Compl. ¶¶ 77-78.) On April 21, 2017 the DOJ sent a letter to Philadelphia instructing the City that it must certify compliance with Section 1373 pursuant to its receipt of funds under the Byrne JAG program in 2016. (Am. Compl. ¶ 83.) The City alleges that no explanation was given then, or has since been given, for the decision to require Section 1373 compliance. The jail access and advance notification conditions were announced on July 25, 2017. The City alleges that the DOJ did not offer satisfactory explanations for how it arrived at any of these three conditions, alternatives that were considered, or what purpose of the JAG program they further. A review of the relevant documents relied on in the Complaint and thus available for our consideration at the Motion to Dismiss stage confirms that the City has in fact properly made out its claim that the Attorney General's decision to impose the Challenged Conditions was arbitrary and capricious.

Indeed, the "Backgrounder on Grant Requirements" published by the DOJ identified "the goal of increasing information sharing between federal, state, and local law enforcement" in order to "ensur[e] that federal immigration authorities have the information they need to enforce the law and keep our communities safe," but failed to specify how the Challenged Conditions would achieve that end.  (ECF 1-1).  A July 6, 2017 press release from the DOJ repeated similar concerns, again without detailing the connection to the Challenged Conditions.   (ECF 1-2).  Exchanges on May 31, 2016 and July 7, 2016 between the Inspector General to the Attorney General's office are largely descriptive of the investigative process it undertook into several jurisdictions' level of compliance with Section 1373, and lack any thorough evaluation of why requiring compliance would further the purpose of the Byrne JAG program.  (ECF 1-10, 11.)  DOJ guidance materials on the imposition of the Challenged Conditions are likewise thin on this subject.  (ECF 1-12, 13, 15, 16.)

At the Motion to Dismiss stage, we cannot say that the City will be unable to establish that the DOJ has not properly explained its decision to impose the Challenged Conditions, or that the decision to impose the conditions runs counter to the evidence available to the DOJ, or an alternative theory that the decision was arbitrary and capricious.  Based on the facts alleged, viewing them in the light most favorable to the City, the Court concludes that the City has plausibly stated a claim that the challenged conditions are arbitrary and capricious.  The Motion to Dismiss Count III will be denied.

**E.  Count IV: Violation of the Spending Clause**

Count IV asserts that DOJ's imposition of the Challenged Conditions exceeds the constitutional limits under the Spending Clause because the Challenged Conditions are "not 'reasonably related' or 'germane[]' to the federal interest that underlies the Byrne JAG grant

program."  (Am. Compl. ¶ 138 (quoting <u>South Dakota v. Dole</u>, 483 U.S. 203, 207-08 & n.3 (1987)).)

The Attorney General moves to dismiss Count IV on the ground that the Challenged Conditions are consistent with the Spending Clause.  The Attorney General argues that they are not ambiguous and that immigration enforcement is related to criminal justice, thus clearing the constitutional hurdle for Spending Clause legislation under cases such as <u>Koslow v. Pennsylvania,</u> 302 F.3d 161, 175 (3d Cir. 2002), which requires only a "discernable relationship" between a funding condition and the federal interest in a program.  Citing legislative history evincing a Congressional desire to allow localities to develop their own solutions to criminal justice issues, the City argues that the Challenged Conditions, which seek to enforce immigration law, do not further the purposes of the Byrne JAG program, and impose unconstitutionally ambiguous requirements on the City.  (City Br. at 29-36.)

As with much of the briefing on the motion to dismiss, the parties mostly repeat their prior positions from the preliminary injunction phase.  In its memorandum issued on November 15, 2017, the Court discussed at considerable length the reasons that the City was likely to succeed on the merits of its challenge to the imposition of the Challenged Conditions as violating the Spending Clause.  The Court began by reviewing some basic principles of Spending Clause jurisprudence:

> Article I, Section 8, clause 1 of the U.S. Constitution grants Congress the "Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Article I grants this power to Congress, and Congress alone. Nothing in Article II of the Constitution provides the Executive with any independent authority to spend, or withhold, federal funds that Congress has appropriated. Rather, the Executive is obligated to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

Congress regularly appropriates money to be paid out to states and localities, and uses that financial leverage to induce policy changes at the state and local level. In this way, "Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take." Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 686 (1999); accord Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 576 (2012). The Supreme Court has likened Spending Clause legislation to a "contract" whereby "in return for federal funds, the States agree to comply with federally imposed conditions." Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)).

At the same time, Congress' power to condition receipt of federal funds is subject to a number of limitations: "Spending Clause legislation must: (1) pursue the general welfare; (2) impose unambiguous conditions on states, so they can exercise choices knowingly and with awareness of the consequences; (3) impose conditions related to federal interests in the program; and (4) not induce unconstitutional action." Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 175 (3d Cir. 2002) (citing South Dakota v. Dole, 483 U.S. 203, 207–08, 210 (1987)).

City of Philadelphia v. Sessions, 280 F. Supp. 3d 579 at *45-46 (E.D. Pa. 2017).

In the section that followed, the Court found that no discernable relationship existed between the federal government's interest in a formula grant program established to provide criminal justice funding to localities and the Access and Notice Conditions, but that the Certification Condition was a closer issue. Id. at *46-50. The Court also found that the Access and Notice Conditions were not unambiguously imposed by Congress, as would be required under the Spending Clause, but had been imposed by the Attorney General, and even the Certification Condition was a closer call, given the multiple possible readings of the "all other applicable Federal laws" language of 34 U.S.C. § 10153(a)(5)(D). Id. at *52. However, the Court declined to make a final ruling on the ambiguity issue at the preliminary injunction phase. Id.

The discussion in the earlier memorandum remains equally applicable at this stage of the litigation, when the Court is simply evaluating whether the City has stated a claim upon which

relief may be granted "that is plausible on its face," which the City most certainly has.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Taking the allegations in the Amended Complaint as true, the Court finds that the City has properly stated a claim that the Challenged Conditions violate the Spending Clause, and accordingly will deny the Attorney General's motion to dismiss Count IV.

### F.  Count V: Tenth Amendment: Commandeering

In Count V, the City alleges that the Challenged Conditions would commandeer City employees to perform federal functions in violation of the Tenth Amendment, and thus seeks a permanent injunction against the imposition of these conditions.  The Attorney General moves to dismiss this Count, arguing that because the Challenged Conditions are attached to a grant that the City is free to decline, the conditions cannot possibly violate the Tenth Amendment.  (Def. Br. at 24.)  The Attorney General further argues that the City has put forth a deficient facial challenge to Section 1373.  (Id. at 25-26.)  The City does not address the argument that it can turn down the grant and thus avoid complying with the conditions, but instead responds that it has properly stated a claim that the Challenged Conditions constitute affirmative commands on City employees and would therefore commandeer City officers and employees in violation of the Tenth Amendment.  (Pl. Br. at 37.)  In addition, the City clarifies that it has not brought a facial challenge to 8 U.S.C. §1373 itself; rather, the City asserts that it has properly alleged that applying Section 1373 to the City as the Attorney General interprets it—as a general matter, rather than requiring compliance under the Certification Condition—would likewise unconstitutionally commandeer City officers and employees. (Id. at 38-42.)

The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the

people." U.S. Const. Am. 10. The anti-commandeering doctrine, driven by federalism, has emerged from this "truism." United States v. Darby, 312 U.S. 100, 124 (1941). Important precedents illuminate both the contours of this doctrine, and its relevance to the present case. In New York v. U.S., the Supreme Court held that a federal statutory provision that required each state to either provide for the disposal of waste generated within its borders within ten years, or take title of such waste, is unconstitutional in that it "is inconsistent with the federal structure of our Government." New York v. U.S., 505 U.S. 144, 177 (1992). The Court observed that "[b]ecause an instruction to state governments to take title to waste, standing alone, would be beyond the authority of Congress, and because a direct order to regulate, standing alone, would also be beyond the authority of Congress, it follows that Congress lacks the power to offer the States a choice between the two." Id. at 176. In Printz v. United States, the Supreme Court held that several provisions of the Brady Handgun Violence Prevention Act were unconstitutional because they "purport[ed] to direct state law enforcement officers to participate, albeit only temporarily, in the administration of a federally enacted regulatory scheme." Printz v. United States, 521 U.S. 898, 904 (1997). In Galarza v. Szalczyk the Third Circuit held that federally-issued "immigration detainers do not and cannot compel a state or local law enforcement agency to detain suspected aliens subject to removal," and observed that if they did, it "would violate the anti-commandeering doctrine of the Tenth Amendment." Galarza v. Szalczyk, 745 F.3d 634, 636 (3d Cir. 2014).

The Access and Notice conditions both impose affirmative obligations on the City. The Certification condition appears to limit the City's ability to direct its officials and employees conduct with respect to federal immigration enforcement. While the conditions are indeed attached to a federal grant that the City in theory could decline, the City is heavily reliant on

these grant funds which the City has received, reliably and predictably, following a standard formula grant application process for years.  As the Court observed in the memorandum on the preliminary injunction, "Philadelphia is faced with a "Hobson's Choice" between, on the one hand, complying with a law it credibly believes is unconstitutional, and on the other hand, foregoing funds it plans to use for life-saving projects."  <u>City of Philadelphia v. Sessions</u>, 280 F. Supp. 3d 579 at *124 (E.D. Pa. 2017).

The Amici States also cite to a statute, 34 U.S.C. § 10228(a), mentioned in passing by the City in its opposition to the motion to dismiss but not in the City's Amended Complaint, which is relevant to the City's commandeering challenge.  (Br. of State of New York et al. at 13-15, ECF 126.)  34 U.S.C. § 10228(a) states:

> Nothing in this chapter or any other Act shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over any police force or any other criminal justice agency of any State or any political subdivision thereof.

<u>Id.</u>  Amici freely acknowledge the paucity of federal case law construing the language of § 10228(a)—particularly at the appellate level—but nonetheless argue that imposition of the Challenged Conditions amounts to unlawful "direction, supervision, or control" over Philadelphia law enforcement efforts.

The Fourth Circuit, in one of only two appellate opinions to have discussed the language of what is now 34 U.S.C. § 10228(a), noted that the "dominant concern of Congress" in enacting this language "apparently was to guard against any tendency towards federalization of local police and law enforcement agencies" and discussed Congress's "fear that overbroad federal control of state law enforcement could result in the creation of an Orwellian 'federal police force.'"  <u>Ely v. Velde</u>, 451 F.2d 1130, 1136 (4th Cir. 1971) (denying injunction against

construction of state prison with federal funds, despite the state's failure to comply with federal environmental and historic preservation statutes).

The Third Circuit invoked the "congressional policy of forbidding federal 'direction, supervision, or control' of local police departments" in a decision affirming the dismissal of a complaint by the United States against the City of Philadelphia and various Philadelphia law enforcement officials for alleged racial discrimination by law enforcement against minority citizens.  United States v. City of Philadelphia, 644 F.2d 187, 204 (3d Cir. 1980) (describing the need for specificity in pleading to protect local law enforcement from "frivolous and insubstantial claims" and "burdensome discovery").  The Court added in a footnote that the language of what is now 34 U.S.C. § 10228 appeared "in the same section that authorizes the Attorney General to sue to prevent discrimination in the administration of federal funds."  Id. at 204 n.27.  This seldom-applied statute may have significant impact on this case and also warrants denial of the motion to dismiss.

We cannot at this stage say that the City will be unable to prove that the Challenged Conditions violate the Tenth Amendment, particularly as they appear to impose the sort of federal "direction, supervision, or control" that 34 U.S.C. § 10228(a) forbids.  The City has put forth sufficient allegations to survive a Motion to Dismiss the claim that the Challenged Conditions, if enforced, would unconstitutionally commandeer City officials.  The Attorney General's Motion to Dismiss Count V will be denied.

### G.  Count VI: Declaratory Judgment Act: Philadelphia Complies with 8 U.S.C. § 1373

In Count VI, the City seeks a declaratory judgment that its policies are in compliance with 8 U.S.C. § 1373.  The Attorney General argues that the City has not stated a proper cause of action to seek this declaratory judgment.  (Def. Br. at 28.)  Additionally, the Attorney General

asserts that this claim must be dismissed because the City's own allegations included in the Amended Complaint demonstrate that their policies violate Section 1373.  (Id. at 30-31.)  The City responds that the Attorney General's position that the City's policies conflict with Section 1373 is simply the result of a misreading and misrepresentation of the details of those policies.  (Id. at 52-53.)  The City argues that the allegations in the Complaint demonstrate that it is at the very least in substantial compliance with 1373.  (Id. at 53-57.)

Under 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).  Having already determined that this case is ripe before this Court, the City's request for a declaratory judgment is appropriate, and we now conclude that the City has alleged facts sufficient to state a claim for declaratory relief at the Motion to Dismiss stage.  The City's policies, as alleged, appear to comply with the requirements of Section 1373.  The City alleges that it has no policy prohibiting the sharing of any immigration status information.  Further, the City is correct that it would be a logical fallacy to conclude that policies that instruct City officials and employees not to collect immigration status information in certain contexts violate Section 1373—as the City points out in its Memorandum, "Philadelphia cannot restrict the sharing of information it does not collect" in the first place. (Am. Compl. ¶ 154.)  The City has made out a proper claim for a declaratory judgment that its policies are in compliance with 8 U.S.C. § 1373.  The Attorney General's Motion to Dismiss Count VI will be denied.

**VI.    Conclusion**

For the foregoing reasons, Defendant Jefferson Beauregard Sessions, III's motion to dismiss is **DENIED**.  An appropriate order follows.

O:\CIVIL 17\17-3894 City v Sessions\17cv3894 Memorandum re MTD.docx