

Hogan Lovells US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
T  +1 267 675 4600
F  +1 267 675 4601
www.hoganlovells.com

May 18, 2018

The Honorable Michael M. Baylson

Re:     City of Philadelphia v. Sessions

Dear Judge Baylson:

Plaintiff City of Philadelphia (the "City" or "Philadelphia") respectfully submits this combined response to the Court's May 11 and May 14 letters.  The City has conferred with counsel for the Department of Justice (the "Department") regarding the Court's letters; the parties have agreed to file their responses on the public docket.  The City appreciates the opportunity to respond to Your Honor's discussion of the City's policies and proposed modifications, but the City maintains its position that the conditions the Department has imposed on the Byrne JAG program are unlawful, and that the City complies with 8 U.S.C. § 1373 as lawfully construed.

In sum and as explained below, if the United States Department of Justice changes restrictions on U.S. Attorneys for approval of ICE detainer requests for presentation to a judge, or if the local ICE office and the local U.S. Attorney's Office were to adopt a policy in which the U.S. Attorney will agree to approve and process an ICE request for a detainer as to a criminal alien, for presentation to a U.S. District Court Judge or U.S. Magistrate Judge, who in turn signs this document—whether termed an arrest warrant or a federal judicial court detainer—the City *would be willing* to notify either the U.S. Attorney or ICE before the release of such individuals and to facilitate the transfer of such individuals into ICE custody from the Philadelphia Prison System ("PPS") or Philadelphia Police Department ("PPD") detention facilities.

**City's Response to the Court's May 11 Letter**

The City is not willing to modify its policy with respect to an ICE immigration detainer if that detainer were not also accompanied by a judicial warrant of some kind. "[D]ocumented proof that the individual named is a 'criminal alien' and that ICE intends to promptly initiate removal proceedings unless they are already in process" is not sufficient for the City.  Such documents do not, in the City's view, constitute the equivalent of a "judicial warrant," and the critical independence such a warrant brings to a process with severe consequences.

Furthermore, the City's understanding is that ICE will not limit its detainer requests to any particular category of individuals in the City's custody—such as undocumented persons with criminal convictions.

The City appreciates the Court's efforts to find "congruence" between the City's advance notification policies and the provisions of federal law respecting aliens convicted of crimes.  But it believes three clarifications are important.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante   Amsterdam   Baltimore   Beijing   Birmingham   Boston   Brussels   Colorado Springs   Denver   Dubai Dusseldorf   Frankfurt   Hamburg   Hanoi   Ho Chi Minh City   Hong Kong   Houston   Johannesburg   London   Los Angeles   Luxembourg   Madrid   Mexico City   Miami   Milan Minneapolis   Monterrey   Moscow   Munich   New York   Northern Virginia   Paris   Perth   Philadelphia   Rio de Janeiro   Rome   San Francisco   São Paulo   Shanghai Silicon Valley   Singapore   Sydney   Tokyo   Warsaw   Washington DC   Associated offices: Budapest   Jakarta   Shanghai FTZ   Ulaanbaatar   Zagreb. Business Service Centers:  Johannesburg   Louisville.   For more information see www.hoganlovells.com

The Honorable Michael M. Baylson    - 2 -    May 18, 2018

*First*, City policy does not permit City officials to honor an ICE detainer (either by detaining a person that has been ordered released, or notifying ICE of the person's release) simply because the subject of the detainer has been previously convicted of a first- or second-degree felony; the City requires that ICE present a warrant signed by a judge, not just an immigration officer.  If ICE does present such a warrant signed by a judge, the City will honor the warrant, no matter the charge.  In this sense, the City's policies ensure that City officials respond to the findings and orders of federal judges (and State judges), rather than acting as "an extension of ICE."

*Second*, the City believes there are significant differences between first- and second-degree felony convictions, on the one hand, and the criteria set forth in the "criminal alien" provisions the Court has referenced—namely, the criteria for persons subject to mandatory detention under 8 U.S.C. § 1226(c).  Section 1226 directs the Attorney General to take custody of aliens who commit offenses listed under the provisions referenced in Section 1226.  Those provisions cover a broad range of conduct, including any crime that qualifies as a "crime involving moral turpitude" under Sections 1182(a)(2)(A)(i)(I) or 1227(a)(2)(A)(i).  Not all "crimes involving moral turpitude" would qualify as first- or second-degree felonies.  And Section 1226 covers other offenses that are even further from the kinds recognizable as first- or second-degree felonies.  These include:

- being "a drug abuser or addict" under Section 1227(a)(2)(B)(ii), as paragraph (B) of Section 1226(c)(1) references all of Section 1227(a)(2)(B); or

- a violation of "any provision of the Military Selective Service Act" (which requires registration by any male residing in the United States, not just U.S. citizens) under Section 1227(a)(2)(D)(iii), as paragraph (B) of Section 1226(c)(1) references all of Section 1227(a)(2)(D).

Thus, Section 1226(c) directs the Attorney General to detain far more people than those convicted of first- and second-degree felonies.  Section 1226(c) appears to apply, for instance, to all opioid addicts—regardless of whether they have been convicted of a drug offense.  If the City were to begin detaining all persons covered by the statute, or notifying ICE of the release of such persons from its custody, the City would stray far afield from enforcing state and local criminal law, and would irreversibly wound the community trust it has worked decades to build.

*Third*, the City is under no obligation to comply with any set of advance notification or detention requests from ICE—neither under Section 1373, nor under Section 1226.  Beginning with the latter, Section 1226(c) identifies people whom "[t]he *Attorney General* shall take into custody"; it says nothing about what, if anything, *States or localities* must do to assist the Attorney General.  Indeed, Section 1252(c) makes clear that States and localities have *no* obligation to detain persons for immigration violations.  That section provides that:

> (a) In general
>
> Notwithstanding any other provision of law, *to the extent permitted by relevant State and local law*, State and local law enforcement officials are *authorized* to arrest and detain an individual who—
>
>> (1) is an alien illegally present in the United States; and

> (2) has previously been convicted of a felony in the United States and deported or left the United States after such conviction,
>
> but only after the State or local law enforcement officials obtain appropriate confirmation from the Immigration and Naturalization Service of the status of such individual and only for such period of time as may be required for the Service to take the individual into Federal custody for purposes of deporting or removing the alien from the United States.

8 U.S.C. § 1252(c) (emphasis added). Section 1252(c) "authorizes," but does not require, State and local officials to arrest certain aliens, and makes abundantly clear that State and local law independently must permit State and local officials to do so. It plainly allows State and localities to decide not to. Reading Section 1226(c) to impose any sort of obligation on the part of States and localities to detain individuals at the behest of the federal government would bring it squarely into conflict with Section 1252(c)—not to mention the Tenth Amendment.

Further, as the City has argued throughout this litigation, *see, e.g.*, Dkt. No. 119, at 48-52, Section 1373 also does not prohibit localities from restricting exchanges of release date information with ICE, as the time of a person's release from custody has no bearing on a person's "citizenship or immigration status."

While the City has considered the Court's proposal that ICE provide the City with "proof that [an] individual is a 'criminal alien,'" it cannot presently change its policy to provide advance notification in such instances. Without providing a warrant signed by a judge, the City is not aware of any "proof" ICE could provide that could resolve the problems inherent in responding to ICE detainers issued by immigration officers, namely, the risk that ICE identifies the wrong person or attributes one person's citizenship or immigration status to another, and the perception that the City is acting "as an extension of ICE." These concerns have increased with ICE's increased enforcement against non-criminals in the Philadelphia area, and the City's residents are, understandably, on edge. The City believes it would jeopardize community relations, and in turn, public safety, to change course and deliver detainees to ICE *without judicial approval*.

**City's Response to May 14 Letter**

1.      Commissioner Ross's views are the same that the City has expressed in this litigation and to which Mr. Abernathy testified. Specifically, Commissioner Ross shares the City's assessment that the public safety is *most* benefitted—especially at this point in time—by not providing advance notification to ICE beyond that provided for in the City's policy of requiring a judicial warrant. The reason for that assessment is that if the City were seen as an arm of ICE and a partner in its civil immigration enforcement, it would have such a chilling effect on police-community relationships in the immigrant community and on crime reporting that it would outweigh any marginal benefit in the most serious cases. Moreover, Commissioner Ross puts his faith in the bail system and in the criminal justice system—to only allow for the release of individuals from custody when they do not pose an intolerable threat to public safety (or flight risk) and to allow for release of individuals when they have served their full sentence as ordered by our courts. That is how our criminal justice, bail, and sentencing system works generally, and there is no reason to presume that undocumented people with prior convictions are especially more dangerous—and less deserving of bail or release after serving their sentences—than others.

2. The Court's proposals in its May 14 letter could address many of the City's concerns with ICE's requests. As far as the City is aware, though, the Department and ICE do not intend to seek judicial warrants for aliens who cannot be criminally charged under 8 U.S.C. §§ 1325 or 1326, and the Department has not issued any directive to the U.S. Attorney's Office for the Eastern District of Pennsylvania instructing that office to seek warrants for people in the Philadelphia area who can be charged under Sections 1325 and 1326 in all cases for which the ICE Philadelphia Field Office wishes to pursue charges and associated removal proceedings.

However, if the Department and ICE developed a process through which the U.S. Attorney reviewed and approved ICE requests for the detention of a person who, due to their criminal history, is subject to mandatory detention under Section 1226(a), presented them to a U.S. District Court Judge or Magistrate Judge for issuance of a warrant for the arrest and detention of that person pending removal proceedings, the City *would be willing* to cooperate with the directions of such a warrant regardless of the federal basis for its issuance. The City is not focused on the name of such a document, whether "warrant," "judicial detainer," or "court order," but simply whether an independent judicial authority has determined that there is a proper basis for the arrest and detention of the targeted individual under federal law. The City would, of course, continue to cooperate with judicial warrants issued regarding individuals charged with criminal violations of Section 1325 and 1326, or other federal criminal statutes.[1]

Under the circumstances where ICE obtained such a warrant, if ICE arrived at the PPD or PPS facility where the individual was being held before the individual was released, the City would allow ICE access to the PPD or PPS facility to take custody of the individual in a controlled environment.

Ultimately, the City appreciates the Court's proposal, and believes it would increase the amount of cooperation that is possible between ICE and the City.

3. The City remains willing to consider any particular revisions to City policies regarding ICE interviews in PPD or PPS facilities. But the City is unaware of what changes it should consider, or how the City's policies have impeded ICE's operations with respect to criminal aliens or others in any way. The City simply alerts detainees of their rights, including the right to decline to answer ICE questions, and the right to have an attorney present during questioning (at their own expense). Neither ICE nor the Department has disputed that people have these rights. Even if an adverse inference can be drawn from an immigrant's silence during an interview, the Department has not represented that ICE has the authority to actually compel testimony. Individuals who have exercised their right to refuse to speak to ICE could do so in the absence of the City's policy, and ICE remains able to speak with any person who wishes to have their attorney present during questioning. The only compromise the Department and ICE appear to have in mind is that the City discontinue informing people that they may decide not to answer ICE questions, so that individuals feel

---

[1] The City, however, cannot agree to detain individuals pursuant to non-criminal judicial warrants beyond the time at which they have been ordered released. First, a requirement of detaining individuals of interest to ICE goes well beyond the issues in this litigation, as both the advance notification and jail access Byrne JAG conditions make clear that they impose no obligation on grantees to hold individuals in detention. *See* Ex. P-24, at 18-19. Second, as set forth above, federal law does not require States or localities to hold individuals in detention. And third, because neither the Department nor ICE have ever presented non-criminal judicial warrants, the City is unaware whether detaining individuals pursuant to such warrants would expose the City to liability for violating any individual rights or privileges.

compelled to answer questions.  The City respectfully declines such a one-sided compromise, but remains open to any alternative proposals.

Respectfully submitted,

*Virginia A. Gibson*

Virginia A. Gibson
Partner
virginia.gibson@hoganlovells.com
D (267) 675-4635

cc:   Marcel Pratt, City Solicitor, City of Philadelphia